983 So.2d 418 (2007)
Johnny Shane KORMONDY, Appellant,
v.
STATE of Florida, Appellee.
Johnny Shane Kormondy, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC05-1200, SC06-210.
Supreme Court of Florida.
October 11, 2007.
Rehearing Denied May 23, 2008.
*425 Michael P. Reiter, Tallahassee, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, and Meredith Charbula, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Johnny Shane Kormondy appeals an order of the circuit court denying his motion to vacate his sentence of death filed under Florida Rule of Criminal Procedure 3.851, and he petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the denial of postconviction relief and deny the petition for writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
Johnny Shane Kormondy was tried and found guilty in 1994 of first-degree murder, three counts of sexual battery with the use of a deadly weapon or physical force, burglary of a dwelling with an assault or while armed, and robbery while armed. He was sentenced to death for his participation in the murder.
The relevant facts concerning the murder are as follows. In the early morning of July 11, 1993, the victim Gary McAdams was murdered, with a single gunshot wound to the back of his head. He and his wife, Cecilia McAdams, had returned home from Mrs. McAdams' twenty-year high school reunion. They heard a knock at the door. When Mr. McAdams opened the door, Curtis Buffkin was there holding a gun. He forced himself into the house. He ordered the couple to get on the kitchen floor and keep their heads down. James Hazen and Johnny Kormondy then entered the house. They both had socks on their hands. The three intruders took personal valuables from the couple. The blinds were closed and phone cords disconnected.
One of the intruders then took Mrs. McAdams to a bedroom in the back. He forced her to remove her dress. He then forced her to perform oral sex on him. She was being held at gunpoint. Another intruder then entered the bedroom. He was described as having sandy-colored hair that hung down to the collarbone. This intruder proceeded to rape Mrs. McAdams while the first intruder again forced her to perform oral sex on him. *426 She was then taken back to the kitchen, naked, and placed with her husband. Subsequently, one of the intruders took Mrs. McAdams to the bedroom and raped her. While he was raping her, a gunshot was fired in the front of the house. Mrs. McAdams heard someone yell for "Bubba" or "Buff" and the man stopped raping her and ran from the bedroom.[1]
Mrs. McAdams then left the bedroom and was going towards the front of the house when she heard a gunshot. When she arrived at the kitchen, she found her husband on the floor with blood coming from the back of his head. The medical examiner testified that Mr. McAdams' death was caused by a contact gunshot wound. This means that the barrel of the gun was held to Mr. McAdams' head.
Kormondy was married to Valerie Kormondy and they had one child. After the murder, Mrs. Kormondy asked Kormondy to leave the family home. He left and stayed with William Long. Kormondy told Long about the murder and admitted that he shot Mr. McAdams. He explained, though, that the gun had gone off accidentally. Long went to the police because of the $50,000 reward for information. Kormondy v. State, 703 So.2d 454 (Fla.1997).
The three codefendants were tried separately. Buffkin was offered a plea deal in return for his testimony against Hazen and Kormondy. Buffkin and Hazen received life sentences. Kormondy was found guilty of first-degree murder, and the jury recommended death by a vote of eight to four. The trial court found the following five statutory aggravating factors: (1) the defendant was previously convicted of a felony involving the threat of violence to the person; (2) the capital felony was committed while the defendant was engaged or was an accomplice in the commission of or an attempt to commit or flight after committing or attempting to commit a burglary; (3) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; (4) the capital felony was committed for pecuniary gain; and (5) the capital felony was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.
The trial court found no statutory mitigators had been established, but considered and weighed a number of nonstatutory mitigators, including Kormondy's childhood deprivations. The court found that Kormondy had suffered deprivation, trauma, and loss of paternal comfort and companionship during his early years and gave these factors moderate weight. The trial judge noted that his consideration of these factors was tempered by his conclusion that Kormondy is more a product of his failure to choose a positive and productive lifestyle than a victim of family dysfunction. In addition, the trial judge gave moderate weight to the fact that Kormondy was a good employee in the past and to the fact that he has a personality disorder. Little weight was given to the fact that Kormondy was drinking alcoholic *427 beverages before the crimes were committed and to the fact that he was well-behaved at trial. Kormondy asserted a number of other nonstatutory mitigating factors that the court gave no weight.
On his direct appeal, Kormondy raised six issues  two guilt phase issues and four penalty-phase issues.[2] This Court found no merit in the first two claims, but found reversible error in the admission of evidence concerning nonstatutory aggravation. A new penalty phase was ordered. See Kormondy v. State, 703 So.2d 454, 463 (Fla.1997).
In May 1999, a new penalty phase was conducted before a new jury, and a new trial judge presided over the proceedings. By a vote of eight to four, the new jury recommended a death sentence. On July 7, 1999, the trial court followed the jury's recommendation and sentenced Kormondy to death. On direct appeal from resentencing, Kormondy raised seven issues.[3] This Court rejected all seven claims and affirmed his sentence of death. Kormondy v. State, 845 So.2d 41 (Fla.2003). In July 2003, Kormondy filed a petition for certiorari review in the United States Supreme Court, and the Court denied review in October 2003. Kormondy v. Florida, 540 U.S. 950, 124 S.Ct. 392, 157 L.Ed.2d 283 (2003). On August 30, 2004, Kormondy filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851. After an evidentiary hearing, on June 20, 2005, the circuit court issued an order denying postconviction relief. Kormondy has appealed the denial of his postconviction motion to this Court. He has also filed a petition for a writ of habeas corpus.

RULE 3.851 APPEAL
Kormondy has appealed the denial of postconviction relief to this Court, raising eleven issues. He contends that (1) trial *428 counsel rendered ineffective assistance during the guilt phase of trial by failing to require Kormondy's presence at pretrial conferences; (2) trial counsel rendered ineffective assistance by allowing Kormondy's statements to law enforcement officers to be introduced into evidence; (3) trial counsel rendered ineffective assistance by conceding Kormondy's guilt for burglary and robbery; (4) trial counsel rendered ineffective assistance by failing to impeach the State's witnesses; (5) trial counsel rendered ineffective assistance by failing to move for the disqualification of Judge Kuder and failing to withdraw from representation before the first trial; (6) trial counsel rendered ineffective assistance during the second penalty phase; (7) trial court erred by finding that the newly discovered evidence of recanted testimony was not credible; (8) rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar, which prevents counsel from contacting jurors, is unconstitutional; (9) execution by electrocution and lethal injection are cruel or unusual punishment or both; (10) his constitutional right against cruel and unusual punishment will be violated as he may be incompetent at the time of execution; and (11) the cumulative effect of errors deprived Kormondy of a fair trial. We deny relief on all of the claims.
Kormondy argues that trial counsel rendered ineffective assistance during the guilt phase of his 1994 trial and during the 1999 resentencing proceeding. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive the defendant of a fair trial. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (affirming the Strickland two-prong analysis for claims of ineffective assistance of counsel). As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). For the second prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. 2052.
Generally, this Court's standard of review following a denial of a postconviction claim where the trial court has conducted an evidentiary hearing accords deference to the trial court's factual findings. McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002). "As long as the trial court's findings are supported by competent substantial evidence, `this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.'" Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla. 1984)). However, the circuit court's legal conclusions are reviewed de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).

Ineffective Assistance of Counsel during Guilt Phase

Absence at Pretrial Conferences
Kormondy argues that his guilt phase counsel was ineffective for failing to require *429 Kormondy's presence at five specific pretrial conferences, which took place on May 26, June 20, June 21, June 23, and July 1, 1994. We disagree and find trial counsel was not ineffective in her handling of these conferences.
To prevail on a claim of ineffective assistance of counsel with regard to this pretrial conference issue, Kormondy must show that he was prejudiced by his absence at each particular pretrial conference. As to Kormondy's absences at the pretrial conferences held on May 26, June 20, and July 1, 1994, Kormondy has not demonstrated such prejudice. Moreover, these three pretrial conferences dealt with procedural issues and requests for clarification. Kormondy offers no support for the notion that any of the matters discussed at the conferences required his input, nor has he demonstrated how his presence would have assisted his counsel. Accordingly, Kormondy's absence at these pretrial conferences had no impact on the result, and Kormondy was not prejudiced.
Furthermore, although Kormondy correctly argues that there was error because he did not waive his presence in writing, such violation is subject to a harmless error analysis. Thus, "the proceeding will only be reversed on this basis if `fundamental fairness has been thwarted.'" Kearse v. State, 770 So.2d 1119, 1124 (Fla. 2000) (quoting Pomeranz v. State, 703 So.2d 465, 471 (Fla.1997)). We hold that Kormondy's failure to be at these particular conferences did not affect the validity of the trial itself to the extent that the verdict could not have been obtained.
In regards to the two pretrial conferences held on June 21 and June 23, 1994, the trial record indicates that Kormondy was actually present and represented to the court that he wished to waive his appearance. As this Court held in Amazon v. State, 487 So.2d 8, 11 (Fla.1986),
[a] capital defendant is free to waive his presence at a crucial stage of the trial. Waiver must be knowing, intelligent, and voluntary. Counsel may make the waiver on behalf of a client, provided that the client, subsequent to the waiver, ratifies the waiver either by examination by the trial judge, or by acquiescence to the waiver with actual or constructive knowledge of the waiver.
The trial court found that, despite the absence of a written waiver of Kormondy's presence, the record and evidence presented at the evidentiary hearing indicated that Kormondy's absence from these two conferences was not involuntary. We agree with the trial court's assessment. At both conferences, the court first asked defense counsel if he was waiving Kormondy's presence, and defense counsel answered affirmatively. The court then explained to Kormondy that he had a right to be present and also explained what matters would be discussed at each conference. Kormondy responded that he wanted to waive his presence. The court also asked Kormondy if the waiver was his own choice or if it was the result of threat or force. Kormondy replied that the waiver was his choice and that he was not forced or threatened to waive his presence.
Consequently, trial counsel's failure to have Kormondy present for the pretrial conferences was not deficient performance and did not cause prejudice. Therefore, we affirm the trial court's denial of relief on this claim.

Withdrawal of Motion to Suppress Kormondy's Statements
Kormondy next argues trial counsel was ineffective for withdrawing the motion to suppress the statements Kormondy made to law enforcement officers after he was arrested. Kormondy argues *430 that if the statements had been excluded from the evidence, the State would have failed to prove the crimes charged beyond a reasonable doubt. However, in order to establish prejudice as a result of trial counsel's withdrawal of Kormondy's motion to suppress, Kormondy must demonstrate that the motion to suppress would have been successful, that is, the evidence would have been excluded. See Zakrzewski v. State, 866 So.2d 688, 694 (Fla.2003) ("[W]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious.") (quoting Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). Because Kormondy fails to establish that the motion to suppress would have been meritorious and fails to establish prejudice, we affirm the trial court's denial of relief on this claim.
Kormondy argues that the motion to suppress would have been successful because his statements to law enforcement officials were not given voluntarily. He argues that because he was shot at several times and bitten several times by police dogs, he was in pain and bleeding when he gave his statements to Detective Allen Cotton and Investigator Wendell Hall at the police station. The State, on the other hand, argues that Kormondy's statements were voluntary because he was read his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before he made his statements. The record indicates that the officers who interrogated Kormondy ensured that he was informed of his Miranda rights. Kormondy reviewed the waiver of rights form and signed it. Even though Kormondy may have been in pain from the dog bites and was crying, these facts do not necessarily mean that the statements given by the defendant were involuntary and thus inadmissible. See Patterson v. State, 513 So.2d 1257, 1260 (Fla.1987) (holding that even though the defendant was in a weakened physical condition, the confession was voluntarily given because there were no threats of violence and the detective read Patterson his Miranda rights and Patterson indicated that he understood his rights and signed a waiver of rights form). The evidence presented shows that Kormondy was not under physical duress at the time he made his statements. Further, the trial record and the evidence adduced at the evidentiary hearing indicate that Kormondy knowingly and intelligently waived his rights without any inducements by law enforcement. Accordingly, trial counsel cannot be deemed ineffective for failing to argue a nonmeritorious motion to suppress. The trial court properly denied relief on this claim.

Concession of Guilt
Kormondy also alleges trial counsel was ineffective in admitting during her opening and closing statements that Kormondy participated in the burglary and robbery. Kormondy further argues that the admissions made by trial counsel took the burden off the State to prove the elements of felony murder. At the evidentiary hearing, Kormondy testified that trial counsel did not tell him about the strategy to concede guilt. He further testified that he did not give trial counsel permission to employ this strategy. On the other hand, trial counsel testified that she recalled informing Kormondy of her strategy to concede guilt to robbery and burglary. She further testified that she told Kormondy that she was using this strategy to save his life. The trial court found trial counsel's recollection of the facts to be far more credible than Kormondy's recollection. The trial court found that Kormondy neither consented to nor objected to trial counsel's strategy to concede his participation *431 in the robbery and burglary. The trial court also found that trial counsel adequately disclosed the strategy to Kormondy.
This Court's standard of review following the denial of a postconviction claim where the trial court has conducted an evidentiary hearing affords deference to the trial court's factual findings. McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002). "As long as the trial court's findings are supported by competent substantial evidence, `this Court will not substitute its judgment for that of the trial court on questions of fact, likewise the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.'" Blanco v. State, 702 So.2d 1250, 1252 (Fla. 1997) (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla.1984)). Accordingly, we will not substitute our judgment for that of the trial court on the trial court's determination that trial counsel's testimony on this issue was more credible than Kormondy's testimony.
In a situation where the defense counsel at the guilt phase of a capital trial concedes guilt to the jury, the United States Supreme Court has held the following:
Defense counsel undoubtedly has a duty to discuss potential strategies with the defendant. But when a defendant, informed by counsel neither consents nor objects to the course counsel describes as the most promising means to avert a sentence of death, counsel is not automatically barred from pursuing that course. The reasonableness of counsel's performance, after consultation with the defendant yields no response, must be judged in accord with the inquiry generally applicable to ineffective-assistance-of-counsel claims: Did counsel's representation "f[a]ll below an objective standard of reasonableness"?
Florida v. Nixon, 543 U.S. 175, 178, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (citation omitted). Because the trial court found that Kormondy neither consented to nor objected to trial counsel's strategy of admitting to the jury his participation in the burglary and robbery, we agree with the trial court that trial counsel was not barred from employing the strategy. We further hold that trial counsel's strategy of conceding guilt to robbery and burglary was a reasonable tactical decision. The record demonstrates that Kormondy had continually admitted his participation in the burglary and robbery. In fact, in the statement made to law enforcement officers, which was presented to the jury by the State, Kormondy admitted his involvement in both crimes. Thus, it would have been disingenuous for trial counsel to argue contrary to Kormondy's own admission of his participation in the burglary and robbery. Further, trial counsel's concession helped gain credibility with the jury by making a concession to the truth of Kormondy's participation in these noncapital offenses. Trial counsel was not only attempting to persuade the jury that Kormondy's statement to law enforcement officers was worthy of belief, but was also attempting to eliminate any consideration that Kormondy participated in the sexual assault of Mrs. McAdams or the murder of Mr. McAdams.
Because conceding guilt to the noncapital offenses was a reasonable tactical decision by trial counsel, her performance was not deficient. We affirm the trial court's denial of relief on this claim.

Failure to Impeach State's Witnesses
Kormondy next argues that trial counsel was ineffective in failing to impeach two State witnesses: (1) William Long and (2) Cecilia McAdams. Kormondy argues that the failure to impeach these two witnesses prejudiced him. First, Kormondy *432 alleges trial counsel was ineffective for failing to impeach William Long regarding his prior felony conviction, the benefits he received from the State in exchange for his testimony against Kormondy, and the inconsistency between Long's deposition statements and his trial testimony. The only claim that is properly before this Court is the claim that trial counsel failed to impeach Long regarding his prior felony conviction.[4] Trial counsel conceded at the evidentiary hearing that she did not remember whether she asked Long about his prior felony conviction even though she did have his criminal record. However, trial counsel did question Long about his use of drugs, about the fact that he failed a urinalysis five times, about his violation of probation, about the fact that he was on the run from the law, and about his use of crack cocaine and alcohol the night Kormondy allegedly confessed his involvement in the crime to Long. While trial counsel did not ask Long the specific question regarding his prior felony conviction, the other questions relate to Long's criminal record and were valid methods of attempting to impeach Long's trial testimony. The one specific question regarding Long's felony conviction would not have changed the effect of Long's testimony on the jury. Thus, Kormondy fails to show how he was prejudiced by trial counsel failing to ask this one question. Because prejudice has not been demonstrated, we affirm the denial of relief on this claim.
Next Kormondy alleges trial counsel was ineffective for failing to impeach Mrs. McAdams with inconsistent statements contained in Deputy Tim Scherer's deposition and a law enforcement incident report. Kormondy alleges that this failure prejudiced him because had trial counsel impeached Mrs. McAdams, there is a reasonable probability that the jury might have questioned Mrs. McAdams' credibility, resulting in Kormondy's receiving a life sentence as opposed to a death sentence.
While we disagree with the trial court's reasons for denying this claim, we nonetheless find counsel was not ineffective. Most of the alleged inconsistencies were between information contained in Deputy Scherer's incident report and his deposition testimony. In addition, most of the alleged inconsistencies are not material differences.[5] The only allegedly inconsistent *433 statements made by Mrs. McAdams that we review here involve the number of assailants in the bedroom when Mr. McAdams was shot in the kitchen. At trial, Mrs. McAdams stated only one man was in the bedroom with her when she heard the gunshot in the kitchen. In both the incident report and Deputy Scherer's deposition, the deputy indicates Mrs. McAdams told him there were two men in the bedroom when the shot went off in the kitchen. However, because there is corroborating evidence to demonstrate that Kormondy was the shooter, prejudice based on this evidence has not been demonstrated.
The evidence concerning the identity of the shooter comes from both the testimony of Mrs. McAdams and William Long. Long testified that Kormondy confessed to shooting Mr. McAdams on two separate occasionsonce when they saw a reward poster about the crimes and again when they returned home from drinking. Additionally, Mrs. McAdams testified that Buffkin was in the bedroom with her when Mr. McAdams was shot. She testified that she recognized the voice of the man who was in the bedroom with her as the man who first entered the McAdams' home with the gun; that man was Buffkin. Thus, if Buffkin was the only man in the bedroom with her when Mr. McAdams was shot, the shooter had to be either Hazen or Kormondy. However, there is no evidence pointing to Hazen as the shooter. Therefore, even if Mrs. McAdams had been impeached with this inconsistent statement about the number of men in the bedroom when Mr. McAdams was shot, there is other evidence to show that Kormondy was in fact the shooter.
Kormondy has not demonstrated prejudice. Therefore, the trial court did not error in denying his claim of ineffective assistance of counsel on this issue.

Failure to Disqualify Judge Kuder and to Withdraw from Representation
Kormondy alleges that trial counsel was ineffective for not moving to disqualify Judge Kuder in the trial proceeding. Kormondy contends that Judge Kuder should have been disqualified because the judge knew the victim, Mr. McAdams, and because the judge's wife worked in the State Attorney's Office. A hearing was conducted where Judge Kuder informed counsel and all three defendants that he had potential conflicts. The judge indicated that Mr. McAdams was a banker at the bank where he conducted business. After disclosing the potential conflicts, Kormondy's counsel stated that she did not object to Judge Kuder presiding over the trial. In addition, Judge Kuder asked each defendant individually whether he objected to the judge presiding over the case. Kormondy indicated that he had no objection. Kormondy now contends that he did not object to Judge Kuder presiding over the trial because trial counsel advised him against objecting. At the evidentiary hearing, trial counsel said that she advised Kormondy not to move to disqualify the judge.
Kormondy has failed to demonstrate either prong of the test for ineffective assistance of counsel as articulated in Strickland. What he has demonstrated is that he was given advice by counsel concerning how to proceed on a matter that was brought to the parties' attention by the trial judge himself. Counsel advised him not to try to disqualify the trial judge, and he followed that advice. The fact that counsel chose under these circumstances, where the mere fact of relationships did *434 not demonstrate bias, to proceed with this trial judge does not demonstrate deficient performance. In addition, Kormondy has neither alleged nor demonstrated how he was prejudiced by the failure to recuse this judge.
Kormondy also alleges that trial counsel should have withdrawn from representation because her relationship with the victim, Mr. McAdams, posed a conflict of interest that affected counsel's representation. Trial counsel testified at the evidentiary hearing that she went to high school with Mr. McAdams, but that he "ran with a different crowd." She further testified that she did not have a close friendship with Mr. McAdams, that she considered their relationship in high school as "nodding acquaintances." The trial court found counsel's testimony credible that she did not have a close friendship with Mr. McAdams.
In Hunter v. State, 817 So.2d 786 (Fla. 2002), we outlined the standard to be applied to claims involving conflicts of interest. We said:
A lawyer suffers from an actual conflict of interest when he or she "actively represent[s] conflicting interests." To demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised. A possible, speculative or merely hypothetical conflict is "insufficient to impugn a criminal conviction." "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." If a defendant successfully demonstrates the existence of an actual conflict, the defendant must also show that this conflict had an adverse effect upon his lawyer's representation.
Id. at 792 (citations omitted) (quoting Cuyler v. Sullivan, 446 U.S. 335, 349, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). We agree with the trial court that counsel's knowledge of the victim in this case does not support a finding that there was an actual conflict of interest. While counsel was a nodding acquaintance of the victim in high school, this does not demonstrate an actual conflict of interest. Kormondy has failed to meet his burden in demonstrating that trial counsel actively represented conflicting interests. Therefore, we affirm the trial court's denial of postconviction relief on this claim.

Simultaneous Representation of William Long
Kormondy also argues a conflict of interest based on the simultaneous representation of William Long, a key State witness, by the Public Defender's Office in Long's violation of probation case. At the evidentiary hearing, Earl Loveless, the chief assistant public defender, testified that the Public Defender's Office (specifically Joseph Kirkland, an assistant public defender) was assigned to represent Long after the office had already established an attorney-client relationship with Kormondy. Loveless also testified that Kirkland had not spoken to Long when the conflict was discovered. As soon as the conflict was discovered, Kirkland wrote a letter to Loveless explaining that there was a conflict of interest. The Public Defender's Office then withdrew from representing Long in his violation of probation case. Based on this testimony, the trial court found that the Public Defender's Office did not have a conflict when it continued to represent Kormondy.
We agree with the trial court that Kormondy failed to show that there was an actual conflict of interest. As soon as the Public Defender's Office discovered the dual representation, the office withdrew *435 from representing Long. The Public Defender's Office properly followed the procedure outlined in rules 4-1.7 and 4-1.16 of the Rules Regulating the Florida Bar, which state that when a conflict arises after representation has been undertaken, the lawyer should withdraw from representation. Accordingly, the trial court properly denied relief on this claim.

Ineffective Assistance of Counsel During Second Penalty Phase
Kormondy alleges that his counsel for the second penalty phase was ineffective in five ways: (1) waiving presentation of mitigation to the jury; (2) failing to present record mitigation to the court in counsel's memorandum and at the Spencer hearing; (3) failing to have Kormondy present at critical stages of proceedings; (4) failing to object to impact evidence and failing to object to lack of corresponding instructions; and (5) failing to proffer testimony of Mrs. McAdams after the trial court sustained a State objection. We find no merit in these claims and affirm the trial court's denial of relief.
First, Kormondy alleges that his waiver of mitigation evidence was invalid because counsel did not investigate possible mitigation evidence and because counsel failed to inform the court of what investigation he did perform. With respect to the investigation and presentation of mitigation evidence, the United States Supreme Court observed in Wiggins v. Smith that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does Strickland require defense counsel to present mitigating evidence at sentencing in every case." Wiggins v. Smith, 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel's decision not to introduce certain mitigation evidence was itself reasonable. Id. at 523, 123 S.Ct. 2527; Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052. When making this assessment, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins, 539 U.S. at 527, 123 S.Ct. 2527.
Counsel testified at the evidentiary hearing that he did investigate possible mitigation evidence by speaking with Kormondy, speaking with Kormondy's mother on a number of occasions, speaking with an expert, and speaking with previous penalty phase counsel about possible mitigation. Counsel further testified that he spoke with Kormondy extensively and discussed every possible mitigator and that Kormondy told him that he did not want to put any of the mitigation into evidence. Kormondy also told counsel that he did not want counsel to call any witnesses during this second penalty proceeding. Kormondy specifically indicated that there was evidence in regards to his drug and alcohol use that he did not want to come into the record.
In denying Kormondy's claim of ineffective assistance of counsel, the trial court applied the Strickland standard and concluded that Kormondy did not satisfy either prong of Strickland. We agree with the trial court's assessment that counsel's investigation and preparation of mitigating evidence was not deficient. The trial court found ample evidence that counsel did conduct a reasonable investigation and discussed all possible mitigation evidence with Kormondy, but Kormondy *436 chose not to present any mitigation evidence. Kormondy was questioned by counsel and the trial court on the record whether he understood that he had a right to present mitigation evidence, and Kormondy replied that he understood that he had that right. Thus, Kormondy knowing and voluntarily waived his right to present mitigation evidence.
Second, Kormondy alleges that counsel failed to present record mitigation evidence in his sentencing memorandum and at the Spencer hearing. The trial court found Kormondy to be mistaken on this issue, and we agree. A review of the record shows that counsel argued that the evidence demonstrated four nonstatutory mitigators; these arguments were also included in the sentencing memorandum.[6] Counsel also argued to the court that Kormondy's statement to law enforcement officers established a statutory mitigator that the capital felony was committed by another and that Kormondy's participation was relatively minor. Counsel asked Kormondy whether there were any other nonstatutory mitigators that he thought counsel should present to the court, to which Kormondy shook his head negatively.
Counsel testified at the evidentiary hearing that he discussed the issues concerning other mitigating factors with Kormondy. Kormondy and counsel agreed that it was a good strategic decision not to present certain record mitigation because of statements that could come out in cross-examination of defense witnesses. The trial court found and we agree that it was a strategic choice made by both counsel and Kormondy not to present certain mitigation to the trial court for its consideration. As this Court held in Spencer, "defense counsel's strategic choices do not constitute deficient conduct if alternative courses of action have been considered and rejected." Spencer v. State, 842 So.2d 52, 62 (Fla.2003). The trial court properly denied relief on this claim.
As his third claim, Kormondy alleges ineffective assistance of counsel for failing to require his presence at critical stages of the proceedings. Kormondy refers to four specific hearings where he alleges he was not presentthe Spencer hearing on June 30, 1999, and three pretrial conferences held on July 21, 1998, March 23, 1999, and April 16, 1999. With regard to the Spencer hearing held on June 30, 1999, and the pretrial conferences held on March 23, 1999, and April 16, 1999, we agree with the trial court that counsel cannot be deemed ineffective because the trial court docket indicates that Kormondy was present at these three proceedings. Kormondy did not present any evidence to the contrary.
The conference on July 21, 1998, seems to be the only proceeding where Kormondy was not present. However, Kormondy has not demonstrated prejudice because of counsel's failure to have him present at this conference. Kormondy did not present any evidence or testimony at the evidentiary hearing to explain what if any decisions that were made at this conference would have been different if he had been present or how any different decisions would have resulted in a life sentence. Therefore, we affirm the denial of postconviction relief on this claim.
*437 Fourth, Kormondy alleges that counsel was ineffective for failing to object to the victim impact evidence presented and failing to object to the lack of a jury instruction. Kormondy did not identify what specific impact evidence was objectionable or irrelevant or what instruction should have been given. Moreover, he has not demonstrated how the victim impact evidence affected the outcome of the penalty proceeding. Thus, this claim is meritless. See Jones v. State, 928 So.2d 1178, 1182 n. 7 (Fla.2006).
Finally, Kormondy alleges that counsel during the second penalty phase failed to proffer prior statements made by Mrs. McAdams for impeachment purposes after the trial court sustained the State's objection. Kormondy alleges that he was prejudiced by counsel's failure because Mrs. McAdams was a key State witness, and because this Court, on direct appeal, would not review his claim that his right to cross-examine a witness was violated as a result of counsel's failure to proffer. We agree with the trial court's ultimate conclusion that Kormondy has failed to demonstrate prejudice based on the failure to proffer.
To satisfy the prejudice prong of Strickland, Kormondy must show that if counsel had proffered Mrs. McAdams' prior statements and succeeded in impeaching Mrs. McAdams, there is a reasonable probability that Kormondy would not have received a death sentence. However, Kormondy fails to demonstrate prejudice because all he has done is lay out the alleged discrepancies in Mrs. McAdams' statements. Kormondy does not provide any argument or evidence to indicate that there is a reasonable probability that the outcome would have been different as a result of impeachment of the witness based on these statements. Because Kormondy fails to establish prejudice, we affirm the trial court's denial of relief on this claim.

Newly Discovered Evidence
Kormondy contends that the trial court erred by determining that the newly discovered evidence of recanted testimony was not credible and that this recanted testimony would not have changed the outcome of the trial. Kormondy argues that Hazen's recent statement, that Hazen was present at the McAdams' house when the crime occurred and that Buffkin was the one who shot Mr. McAdams, would have resulted in a life sentence based on a proportionality assessment. Kormondy further argues that Buffkin's recent affidavit claiming that it was Buffkin who shot Mr. McAdams and not Kormondy is also newly discovered evidence. This evidence, he argues, also proves that Kormondy was not the shooter and that Kormondy should be given a life sentence on resentencing.
To obtain a new trial or new sentencing based on newly discovered evidence, a defendant must meet two requirements. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the exercise of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. See Jones v. State, 709 So.2d 512, 521 (Fla.1998) (Jones II). Newly discovered evidence satisfies the second prong of the Jones II test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." Jones II, 709 So.2d at 526 (quoting Jones v. State, 678 So.2d 309, 315 (Fla.1996)). If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe *438 sentence. See Jones v. State, 591 So.2d 911, 915 (Fla.1991) (Jones I).
In making its decision concerning whether the newly discovered evidence compels a new trial, the trial court must "consider all newly discovered evidence which would be admissible," and must "evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial." Id. at 916. This determination includes a decision on:
[W]hether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether this evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.
Jones II, 709 So.2d at 521 (citations omitted).
The analysis is similar when the newly discovered evidence is based on the recantation of a witness's prior testimony. In such situations, the trial court is cautioned that recanted testimony is exceedingly unreliable, so a trial judge should deny a new trial if it is not satisfied that the new testimony is true. Special attention should be given to this testimony where the recantation involves a confession of perjury. See Consalvo v. State, 937 So.2d 555 (Fla.2006), cert. denied, ___ U.S. ___, 127 S.Ct. 1821, 167 L.Ed.2d 330 (2007); Henderson v. State, 135 Fla. 548, 185 So. 625 (1938). A trial court's ruling on a motion based on newly discovered evidence, including a witness's recanted testimony, will not be reversed on appeal unless there is shown to be an abuse of discretion. See Mills v. State, 786 So.2d 547, 549 (Fla.2001).
The trial court found that Hazen's recent statement met the first prong of the Jones standard, that is, the statement was not known at the time of trial. Hazen did not testify at Kormondy's trial, and Hazen was tried after Kormondy. At his own trial Hazen said he was not at the scene when Mr. McAdams was killed and Mrs. McAdams was raped. Hazen only recently made the statement that is at issue here. Thus, this testimony was not available prior to Kormondy's trial. However, the trial judge questioned the credibility of the statement after comparing the statement with other testimony produced at the evidentiary hearing and after examining all the circumstances of the case. As a result, the trial court found that a new trial was not warranted. We find that the trial court did not abuse its discretion in denying a new trial and that its findings are supported by competent substantial evidence.
At his own trial, Hazen testified that he was not present when the crimes were committed. He said, under oath, that he did not sexually assault Mrs. McAdams and that he did not rob anyone. He testified that after the incident, Buffkin told him that he shot Mr. McAdams by accident, but that he would have had to shoot him anyway. In his more recent statement, however, Hazen says that he was present during the crimes and that he lied at his own trial. At the evidentiary hearing, Hazen testified that he saw Buffkin standing behind Mr. McAdams with a gun. He further testified that he did not see Buffkin shoot Mr. McAdams because he was at the back of the house at that time. He said Buffkin made a comment to him that implied that it was Buffkin who shot Mr. McAdams. Hazen also testified that he does not have a problem lying under oath.
*439 The trial court compared these recent statements by Hazen with other trial testimonies, specifically those of Mrs. McAdams and William Long. Mrs. McAdams testified that Buffkin was in the room with her when Mr. McAdams was shot. William Long testified that Kormondy told him that he, Kormondy, shot Mr. McAdams. As stated in the order denying postconviction relief, the judge reviewed the trial testimony of both Mrs. McAdams and Long. The trial court then examined the circumstances of the case to assess the reliability of Hazen's recent statement. Through other testimony presented, the trial court found that Hazen and Kormondy were loosely related to one another Hazen was the foster child of Kormondy's aunt, his mother's sister. Testimony also revealed that Hazen and Kormondy were reared as cousins. Taking all this evidence into consideration, the trial court found that Hazen's recent statement was not credible and it would not have led to an acquittal of Kormondy. Additionally, this evidence would not have resulted in a different sentence. The evidence supports the trial court's denial of relief on this claim.
The trial court similarly found that Buffkin's statement met the first prong of the Jones standard. However, the trial court also found the statement was not credible. After comparing the statement with other testimony produced at the evidentiary hearing and after examining all the circumstances of the case, the court found a new trial was not warranted. We find that the trial court did not abuse its discretion in denying a new trial and that the trial court's findings are supported by competent substantial evidence.
On three occasions Buffkin said Kormondy shot Mr. McAdamsin his statement to law enforcement officers, at his deposition, and at Hazen's trial. However, in his recent affidavit, Buffkin states that he was the one who shot Mr. McAdams.[7] At the evidentiary hearing, Buffkin testified that he pointed to Kormondy as the shooter because he was hoping to receive a plea bargain in his own case. He further testified that on the night of the crime, Kormondy was in the kitchen with him searching Mrs. McAdams' purse while Buffkin held the gun at Mr. McAdams' head. Buffkin said that he bumped Mr. McAdams in the head with the gun and the gun fired. Buffkin also admitted to lying to the jury, the state attorney's office, his lawyer, investigators, to essentially everybody, but claimed that he was now telling the truth.
The trial court also compared the postconviction statements by Buffkin with other trial testimonies, specifically those of Mrs. McAdams and William Long. The trial court also examined the circumstances of the case to assess the reliability of Buffkin's recent statement. The court concluded that Buffkin's sole purpose for testifying at the evidentiary hearing was to attempt an escape.[8]
*440 Based on the evidence presented at the hearing, the evidence presented at trial, and the circumstances presented, the trial court properly found that Buffkin's recent statement was not credible and it would not have changed the outcome of Kormondy's trial or penalty phase. Accordingly, the trial court properly denied relief on this claim.

Jury Interview
Kormondy argues that rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar is unconstitutionally vague because it fails to put counsel on notice of what behavior is subject to disciplinary action. This Court has consistently rejected constitutional challenges to rule 4-3.5(d)(4). See, e.g., Power v. State, 886 So.2d 952, 957 (Fla.2004); Johnson v. State, 804 So.2d 1218 (Fla.2001). Moreover, the rule provides a mechanism for defendants to interview jurors when there are good faith grounds for a challenge. Before an attorney will be allowed to interview any member of the jury, the moving party must make sworn allegations that, if true, would require a new trial. Johnson, 804 So.2d at 1225. Kormondy has not filed a motion requesting permission to interview jurors, alleged any specific juror misconduct, or submitted any sworn statements in this regard. His claim appears to be nothing more than a request to investigate possible grounds for finding juror misconduct. See Arbelaez v. State, 775 So.2d 909, 920 (Fla. 2000) (finding that a defendant does not have a right to conduct "fishing expedition" interviews with the jurors after a guilty verdict is returned). Accordingly, postconviction relief is not warranted on this claim.

Lethal Injection
This Court has consistently rejected arguments that these methods of execution, lethal injection and electrocution, are unconstitutional. See, e.g., Suggs v. State, 923 So.2d 419, 441 (Fla.2005); Sochor v. State, 883 So.2d 766, 789 (Fla.2004) (rejecting claims that both electrocution and lethal injection are cruel and unusual punishment); Provenzano v. Moore, 744 So.2d 413, 414-15 (Fla.1999) (holding that execution by electrocution is not cruel and unusual punishment); Sims v. State, 754 So.2d 657, 668 (Fla.2000) (holding that execution by lethal injection is not cruel and unusual punishment). Accordingly, postconviction relief was properly denied.[9]

Competency to be Executed
Kormondy concedes that the claim that he may not be competent at the time of execution is not ripe for review as he has not been found incompetent and a death warrant has not been signed. However, he contends that he is raising the issue for preservation purposes. This Court has repeatedly found that no relief is warranted on similar claims. See State v. Coney, 845 So.2d 120, 137 n. 19 (Fla. 2003) (rejecting claim that defendant was insane to be executed where he acknowledged that claim was not yet ripe and was being raised only for preservation purposes); Jones v. State, 845 So.2d 55, 74 (Fla.2003) (finding claim that defendant may be insane to be executed was "not ripe for review" where defendant had not been found incompetent and a death warrant had not been signed; noting that defendant made claim "simply to preserve *441 it for review in the federal court system"); Hall v. Moore, 792 So.2d 447, 450 (Fla. 2001) (stating that it is premature for a death-sentenced individual to present a claim of incompetency or insanity, with regard to his execution, if a death warrant has not been signed). Accordingly, Kormondy is not entitled to relief on this claim.

Cumulative Error
Kormondy's final 3.851 claim is that the cumulative effect of the alleged errors requires that he receive a new trial. However, because all of Kormondy's individual claims are without merit, his cumulative error claim must fail. See Griffin v. State, 866 So.2d 1, 22 (Fla.2003) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail."); Vining v. State, 827 So.2d 201, 219 (Fla. 2002) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit."); Downs v. State, 740 So.2d 506, 509 (Fla. 1999) (concluding that where allegations of individual error do not warrant relief, a cumulative error argument based thereon is without merit). We affirm the trial court's denial of relief based on the allegation of cumulative error.

PETITION FOR WRIT OF HABEAS CORPUS
Kormondy raises three claims in his petition for habeas corpus. He contends that (1) appellate counsel was ineffective for failing to argue to this Court that the trial court's order failed to consider record mitigation in violation of Farr v. State, 621 So.2d 1368 (Fla.1993); (2) appellate counsel was ineffective for not presenting Mrs. McAdams' prior deposition testimony on direct appeal to this Court in order to establish that the trial court erred by not allowing Kormondy to confront Mrs. McAdams; and (3) appellate counsel was ineffective for failing to argue that Kormondy's waiver of mitigation was invalid because the trial court did not ask trial counsel what investigation for mitigation was done and what mitigation was available in violation of Koon v. Dugger, 619 So.2d 246 (Fla.1993). As explained below, Kormondy is not entitled to habeas relief on any of the three claims.

Ineffective Assistance of Appellate Counsel
Claims of ineffective assistance of appellate counsel are properly raised in a petition for writ of habeas corpus addressed to the appellate court that heard the direct appeal. See Rutherford v. Moore, 774 So.2d 637 (Fla.2000). The standard for proving ineffective assistance of appellate counsel follows the same two-prong analysis established for an ineffective assistance of trial counsel claim under Strickland. See Wilson v. Wainwright, 474 So.2d 1162 (Fla.1985). Thus, when evaluating a claim for ineffective assistance of appellate counsel, this Court must determine: (1) whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance, and (2) whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result. See Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); accord Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000).
In raising a claim of ineffective assistance of counsel, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see *442 also Knight v. State, 394 So.2d 997, 1001 (Fla.1981). Furthermore, a petitioner cannot prevail on a claim of ineffective assistance of appellate counsel "[i]f a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal." Rutherford, 774 So.2d at 643 (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). Nor can appellate counsel be deemed ineffective for failing to prevail on an issue raised and rejected on direct appeal. See Spencer v. State, 842 So.2d 52 (Fla.2003).

Record Mitigation
Kormondy argues that appellate counsel was ineffective for not arguing before this Court that the trial court failed to consider record mitigation in the second penalty phase proceeding in violation of Farr v. State, 621 So.2d 1368 (Fla.1993). This Court in Farr held that "mitigating evidence must be considered and weighed when contained anywhere in the record, to the extent it is believable and uncontroverted." Id. at 1369. However, as we said in Kormondy's postconviction claim alleging failure to present record mitigation to the court, Kormondy waived his right to present evidence in mitigation and specifically did not want to emphasize some mitigating evidence. The four nonstatutory mitigators and the one statutory mitigator that were put on the record were properly evaluated by the trial court judge in the sentencing order.
Thus, we find that there was no violation committed by the trial court and the court followed the procedures of the Farr decision. Had appellate counsel raised this issue on appeal, the issue would in all probability have been found without merit. This Court held in Rutherford that a petitioner cannot prevail on a claim of ineffective assistance of appellate counsel "[i]f a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal." Rutherford, 774 So.2d at 643 (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). Accordingly, Kormondy is not entitled to habeas relief on this claim.

Presentation of Mrs. McAdams' Prior Deposition Testimony
Kormondy next argues that his appellate counsel was ineffective for not presenting Mrs. McAdams' deposition testimony on direct appeal to this Court. On appeal to this Court from the second penalty phase, appellate counsel argued that Kormondy was denied his Sixth Amendment right to cross-examine a witness when he attempted to impeach Mrs. McAdams' testimony by questioning her about a prior inconsistent deposition statement. This Court rejected the claim and noted that after the objection was sustained, "[t]here was no explanation or proffer made at this point concerning what the defense was seeking with this question." Kormondy v. State, 845 So.2d 41, 52 (Fla. 2003).
Kormondy now argues that in his presentation of the claim of violation of his right to cross-examine a witness, appellate counsel should have presented Mrs. McAdams' deposition testimony to this Court. Kormondy argues that had appellate counsel done so, this Court would have ruled on the merits of the issue. Because the record demonstrates that no proffer was made as required under Finney v. State, 660 So.2d 674 (Fla.1995), appellate counsel could not present to this Court evidence that was not proffered to the trial court. Accordingly, Kormondy is not entitled to habeas relief on this claim.

Invalid Waiver of Mitigation
Kormondy alleges appellate counsel was ineffective for failing to argue that Kormondy's waiver of mitigation evidence was invalid because the trial court did not *443 ask trial counsel about what investigation of mitigation was done and what mitigation was available. The record demonstrates that the issue of mitigating evidence and counsel's investigation was discussed and that all desired mitigation was presented. Kormondy, however, chose not to present any mitigation evidence. Appellate counsel is not ineffective for failing to raise a nonmeritorious claim. Habeas relief is denied on this claim.

CONCLUSION
For the reasons stated above, we affirm the trial court's denial of postconviction relief, and we deny the petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] Kormondy, in this case, and Hazen, in Hazen v. State, 700 So.2d 1207 (Fla.1997), present different factual scenarios. The trial records are inconsistent as to the locations of Hazen and Buffkin at the time of the fatal shot. During Kormondy's trial, Mrs. McAdams testified that Buffkin was with her in the back of the house when she heard a shot fired. Officer Hall testified that Kormondy told him in an unrecorded statement that Buffkin fired the fatal shot and Hazen was in the back of the house with Mrs. McAdams. In a tape-recorded confession played for the jury, Kormondy again said that Buffkin shot the victim. During Hazen's trial, Buffkin testified that Kormondy killed the victim and Hazen was in the back room with Mrs. McAdams. Hazen testified that he was not present at the scene when the crimes against the McAdams were committed.
[2] The issues raised were: (1) whether the trial court erred by allowing Deputy Cotton to bolster William Long's testimony about Kormondy's confession; (2) whether the motion for judgment of acquittal should have been granted since the evidence did not establish premeditation; (3) whether the trial court erred in admitting bad character evidence in the form of unconvicted crimes or nonstatutory aggravating circumstances; (4) whether the trial court erred in its treatment of aggravating circumstances; (5) whether the trial court erred in its treatment of mitigation; and (6) whether the death sentence is unconstitutional or, more specifically, disproportionate.
[3] The seven issues Kormondy raised were: (1) whether the death penalty is constitutional and whether this sentence was proportional given that (a) the codefendants, Buffkin and Hazen, were given life sentences, and (b) the death was caused by an accidental firing of the weapon; (2) whether the resentencing trial and order violated this Court's mandate from the first appeal, violated principles of law protecting the accused from having questions of ultimate fact relitigated against him, and violated Kormondy's rights by finding aggravators not tried or argued; (3) whether the trial court reversibly erred in its mitigation findings because the trial court defied this Court's mandate, committed legal and factual errors, and contradicted itself; (4) whether the trial court erred by allowing the State to present irrelevant, cumulative, and unduly prejudicial collateral crime and nonstatutory aggravating evidence about Kormondy's capture by a canine unit more than a week after the crime took place; (5) whether Kormondy was denied his right to cross-examine and confront state witness Cecilia McAdams concerning her ability to identify and distinguish the perpetrators; (6) whether the introduction of compound victim impact evidence, much of which was inadmissible, was fundamental error that undermined the reliability of the jury's recommendation; and (7) whether the imposition of death in the absence of notice of the aggravators sought or found, or of jury findings of the aggravators and death eligibility, offends due process and the protection against cruel and unusual punishment under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[4] With regard to the benefits Long received from the State and the inconsistency between Long's deposition statements and trial testimony, these arguments are not properly brought under this claim because they were not raised as ineffective assistance of trial counsel claims in the postconviction motion. As a result, the trial court did not address either of these issues. This Court has held that "an appellate court will not consider an issue unless it was presented to the lower court." Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982).
[5] For example, one inconsistency involves where the sexual assault against Mrs. McAdams occurred. Mrs. McAdams testified that all three sexual assaults occurred on the carpeted floor. The incident report also states that the sexual assaults occurred on the carpeted floor. However, Deputy Scherer testified in his deposition that Mrs. McAdams told him that the sexual assaults occurred on the bed. Thus, the inconsistency is between what the deputy wrote at the time he spoke to the victim and what he said at his deposition. In any event, this inconsistency is not material to the outcome of the trial as Kormondy has not demonstrated the importance of where the rapes occurred. The two other alleged inconsistent statements involve where the first gunshot was fired and what the assailants were wearing. However, neither of these issues is a material difference that would have affected the outcome of the trial. Another alleged inconsistency involves the number of assailants who raped Mrs. McAdams. A review of the statements reveals that there is no inconsistency in Mrs. McAdams' statements. Both the incident report and Mrs. McAdams' testimony state that all three men raped her while Deputy Scherer's deposition does not mention the number of assailants who raped her.
[6] The four nonstatutory mitigators include: (1) Kormondy cooperated fully with law enforcement officers after his arrest; (2) the two codefendants are serving life sentences; (3) Kormondy had no intent that Mr. McAdams die as a result of the crimes they discussed; and (4) Kormondy exhibited good behavior and good conduct during the course of the trial.
[7] Buffkin has already been tried and sentenced for his participation in the crimes against the McAdamses. He has nothing more to lose except a possible prosecution for perjury.
[8] Testimony and evidence presented revealed that Buffkin apparently had a plan to escape after his evidentiary hearing testimony. Shane Lewis, a detention deputy at the Escambia County Sheriff's Office, testified at the evidentiary hearing that when he was transporting Buffkin back to the correctional institute after Buffkin testified, he could not remove the iron restraints placed on Buffkin's legs. He testified that he had to use a pair of bolt cutters to cut them off and when he did, he discovered a piece of metal stuck in the hole. The metal piece would not allow him to use the handcuff key on the hole. Officer Hobby, the lock and key officer at the correctional institute, testified that the piece of metal found in the hole was a makeshift key. In addition to these circumstances, there was evidence that Buffkin had escaped from custody in the past.
[9] Kormondy acknowledges that this issue was presented for purposes of preservation for the future. We express no opinion concerning Kormondy's right to seek relief in the future based on proceedings conducted in the circuit court following the execution of Angel Diaz.