# Supreme Court of Florida

_____

No. SC14-2428
_____

**JOHNNY SHANE KORMONDY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[January 5, 2015]

PER CURIAM.

Johnny Shane Kormondy, a prisoner under sentence of death and under an active death warrant,[1] appeals from an order denying his first successive motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.851 after his death warrant was signed. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. In this motion, Kormondy once again claims that he was not the shooter and that his codefendant, Curtis Buffkin, who received a life sentence, was the shooter and therefore more culpable. We have previously rejected alleged newly

---

1. On November 24, 2014, Governor Rick Scott issued Kormondy's death warrant. Kormondy's execution is scheduled for Thursday, January 15, 2015, at 6:00 p.m.

discovered evidence of Buffkin's testimony that he was the shooter of the victim in this case. Kormondy v. State (Kormondy III), 983 So. 2d 418, 438-40 (Fla. 2007). In this successive motion, Kormondy primarily reargues that newly discovered evidence, consisting of affidavits from prison inmates that Buffkin told them he was the shooter, supports a finding that he did not shoot the victim. Because Kormondy claims he is less culpable, he contends that his death sentence should be reduced to life imprisonment. We conclude that the affidavits from the prison inmates do not meet the test for newly discovered evidence as they are not of such nature that they would probably yield a life sentence. Kormondy is therefore not entitled to relief.

In addition to the claim of newly discovered evidence, Kormondy raises a claim of ineffective assistance of postconviction counsel, which we reject as not cognizable in this state court proceeding. Banks v. State, 39 Fla. L. Weekly S661, S662 (Fla. Nov. 3, 2014), cert. denied, 135 S. Ct. 511 (2014). Accordingly, for the reasons we more fully explain below, we affirm the trial court's order denying Kormondy postconviction relief.

**FACTUAL AND PROCEDURAL HISTORY**

The facts of this case are set forth in Kormondy's direct appeal:

The victim Gary McAdams was murdered, with a single gunshot wound to the back of his head, in the early morning of July 11, 1993 [in Pensacola, Florida]. He and his wife, Cecilia McAdams, had returned home from Mrs. McAdams' twenty-year high-school

reunion. They heard a knock at the door. When Mr. McAdams opened the door, Curtis Buffkin was there holding a gun. He forced himself into the house. He ordered the couple to get on the kitchen floor and keep their heads down. James Hazen and Johnny Kormondy then entered the house. They both had socks on their hands. The three intruders took personal valuables from the couple. The blinds were closed and phone cords disconnected.

At this point, one of the intruders took Mrs. McAdams to a bedroom in the back. He forced her to remove her dress. He then forced her to perform oral sex on him. She was being held at gun point.

Another of the intruders then entered the room. He was described as having sandy-colored hair that hung down to the collarbone. This intruder proceeded to rape Mrs. McAdams while the first intruder again forced her to perform oral sex on him.

She was taken back to the kitchen, naked, and placed with her husband. Subsequently, one of the intruders took Mrs. McAdams to the bedroom and raped her. While he was raping her, a gunshot was fired in the front of the house. Mrs. McAdams heard someone yell for "Bubba" or "Buff" and the man stopped raping her and ran from the bedroom. Mrs. McAdams then left the bedroom and was going towards the front of the house when she heard a gunshot come from the bedroom. When she arrived at the kitchen, she found her husband on the floor with blood coming from the back of his head. The medical examiner testified that Mr. McAdams' death was caused by a contact gunshot wound. This means that the barrel of the gun was held to Mr. McAdams' head.

Kormondy was married to Valerie Kormondy. They have one child. After the murder, Mrs. Kormondy asked Kormondy to leave the family home. He left and stayed with Willie Long. Kormondy told Long about the murder and admitted that he had shot Mr. McAdams. He explained, though, that the gun had gone off accidentally. Long went to the police because of the $50,000 reward for information.

A grand jury indicted Kormondy, Buffkin, and Hazen on July 27, 1993. Each was ultimately tried separately. Buffkin was offered a plea bargain by the State in return for assistance in the prosecution of Kormondy and Hazen.

Kormondy v. State (Kormondy I), 703 So. 2d 454, 456-57 (Fla. 1997) (footnote omitted).

Buffkin pled guilty to first-degree murder and received a life sentence. Hazen v. State, 700 So. 2d 1207, 1208 (Fla. 1997). Buffkin did not testify at Kormondy's trial. In addition to implicating Kormondy as the shooter in his statement to the police and in his deposition, Buffkin testified during Hazen's trial that Kormondy was the shooter. Kormondy III, 983 So. 2d at 426 n.1, 439. It was "clear from Buffkin's own testimony that he and Kormondy were the instigators of this criminal episode" and that "[o]nce inside the home, the events proceeded as '[Buffkin] and Kormondy had talked about it.' " Hazen, 700 So. 2d at 1214. Hazen testified at his own trial that Buffkin admitted to killing Mr. McAdams. Kormondy v. Sec'y, Fla. Dep't of Corrs. (Kormondy V), 688 F.3d 1244, 1269 (Fla. 11th Cir. 2012), cert. denied, 133 S. Ct. 764 (2012). Hazen was convicted of first-degree murder, three counts of sexual battery with the use of a deadly weapon or physical force, burglary of a dwelling with an assault or while armed, and robbery while armed. Hazen, 700 So. 2d at 1208. The jury recommended a death sentence for Hazen by a vote of seven-to-five, which the trial court followed. Id. In Hazen's direct appeal, we determined that Buffkin's life sentence precluded a

death sentence for Hazen. Id. at 1214. Because Buffkin was "a prime instigator" and more culpable than Hazen, we determined that Hazen's death sentence was disproportional. Id. at 1211, 1214. Accordingly, we vacated Hazen's death sentence and remanded for the imposition of a life sentence on his murder conviction without the possibility of parole for twenty-five years. Id. at 1215.

Kormondy has never denied being a participant in the criminal episode but denied he was responsible for the murder or rape and claimed that Buffkin was responsible. As this Court stated in Kormondy III, "Kormondy had continually admitted his participation in the burglary and robbery. In fact, in the statement made to law enforcement officers, which was presented to the jury by the State, Kormondy admitted his involvement in both crimes." 983 So. 2d at 431. "Officer Hall testified that Kormondy told him in an unrecorded statement that Buffkin fired the fatal shot and Hazen was in the back of the house with Mrs. McAdams. In a tape-recorded confession played for the jury, Kormondy again said that Buffkin shot the victim." Kormondy I, 703 So. 2d at 456 n.1.

In July 1994, Kormondy was found guilty of first-degree murder, three counts of sexual battery with the use of a deadly weapon or physical force, burglary of a dwelling with an assault or while armed, and robbery while armed. Id. at 457. At the penalty phase, the jury recommended a death sentence by a vote

of eight to four.  Id.  The trial court ultimately followed the jury's recommendation and sentenced Kormondy to death.  Id. at 458.

On direct appeal, Kormondy raised the following six claims: (1) the trial court erred in allowing Deputy Allen Cotton to bolster Willie Long's testimony; (2) the trial court should have granted a judgment of acquittal as to the charge of premeditated murder because the State's own evidence failed to discount the reasonable hypothesis that the shooting was accidental; (3) the trial court erred in admitting bad character evidence in the form of unconvicted crimes or nonstatutory aggravating circumstances; (4) the trial court erred in its treatment of aggravating circumstances; (5) the trial court erred in its treatment of mitigation; and (6) Kormondy's death sentence was disproportionate.  Id. at 458-60.

While we determined that the evidence could not support a finding of premeditation as to the unlawful killing of Mr. McAdams, we affirmed Kormondy's conviction for first-degree murder because the record supported a first-degree felony murder conviction.  Id. at 460.[2]  Because we concluded that it was reversible error for the jury to have heard that Kormondy said he would kill William Long and Mrs. McAdams if he ever got out of jail, we vacated Kormondy's death sentence and remanded for a new penalty phase.  Id. at 460,

---

2. This Court also affirmed Kormondy's convictions for three counts of armed sexual battery, one count of burglary of a dwelling with an assault and an intent to commit a theft, and one count of armed robbery.  Id. at 463.

- 6 -

463. Although we stated that "we need not address the remaining [penalty-phase] issues," we noted "certain other errors that should be avoided in the new penalty-phase proceeding." Id. at 460.[3]

On remand, Kormondy "knowing[ly] and voluntarily waived his right to present mitigation evidence." Kormondy III, 983 So. 2d at 436. The new sentencing jury recommended a sentence of death—again by an eight-to-four vote—which the trial court again followed. Kormondy v. State (Kormondy II), 845 So. 2d 41, 46 (Fla. 2003). The trial court found that the following two aggravators were established: (1) previous conviction of a felony involving the use of threat or violence, namely, the robbery of Mr. and Mrs. McAdams or the sexual battery of Mrs. McAdams; and (2) the crime for which Kormondy was being sentenced was committed while he was engaged in or an accomplice in the commission of an attempt to commit a crime of burglary. Id. at 48. The trial court gave great weight to both aggravators. Id. In its sentencing order, the trial court expressly found that "[t]he evidence establishes beyond a reasonable doubt that Gary McAdams was killed by the discharge of a .38 caliber bullet fired at point blank range by Defendant Kormondy from a pistol held to the head of Gary

---

3. We cautioned the trial court that (1) the cold, calculated, and premeditated aggravator cannot be found if premeditation is not established; and (2) a sentencing order must reflect only facts from the record in the particular case. Id. at 463.

McAdams." State v. Kormondy, No. 93-3302 (Fla. 1st Cir. Ct. July 7, 1999) (Sentencing Order, at 4). The trial court found no statutory mitigation and considered and rejected several nonstatutory mitigators. Kormondy II, 845 So. 2d at 48. The trial court "reject[ed] Kormondy's argument that he was a minor participant and less culpable than his accomplices." Id. Having rejected all of Kormondy's claims, we affirmed Kormondy's death sentence in the appeal of his resentencing. Id. at 54.[4] The United States Supreme Court denied certiorari. Kormondy v. Florida, 540 U.S. 950 (2003).

---

4. Kormondy set forth the following seven issues:

(1) whether the death penalty is constitutional and whether this sentence was proportional in this case given that (a) the codefendants, Curtis Buffkin and James Hazen, were given life sentences and (b) the death was caused by an accidental firing of the weapon; (2) whether the resentencing trial and order violated this Court's mandate from the first appeal, violated principles of law protecting the accused from having questions of ultimate fact relitigated against him, and violated Kormondy's rights by finding aggravators not tried or argued; (3) whether the trial court reversibly erred in its mitigation findings because the trial court defied this court's mandate, committed legal and factual errors, and contradicted itself; (4) whether the trial court erred by allowing the State to present irrelevant, cumulative, and unduly prejudicial collateral crime and nonstatutory aggravating evidence about Kormondy's capture by a canine unit more than a week after the crime took place; (5) whether Kormondy was denied his right to cross-examine and confront state witness Cecilia McAdams concerning her ability to identify and distinguish the perpetrators; (6) whether the introduction of compound victim impact evidence, much of which was inadmissible, was fundamental error that undermined the reliability of the jury's recommendation; and (7) whether the imposition of death in the absence of notice of the

In August 2004, Kormondy filed an initial motion for postconviction relief pursuant to Florida Rules of Criminal Procedure 3.850 and 3.851, which was subsequently amended. Kormondy alleged a claim of newly discovered evidence which consisted of Hazen claiming that he saw Buffkin holding a pistol against the head of Mr. McAdams before he heard the gunshot and that Buffkin said it was an accident. Kormondy also alleged newly discovered evidence that Buffkin stated that he, not Kormondy, shot Mr. McAdams. In support, Kormondy attached an affidavit from Buffkin.[5]

At the evidentiary hearing, which took place in 2005, Buffkin testified that he accidentally killed Mr. McAdams. As this Court explained Buffkin's testimony, "Kormondy was in the kitchen with him searching Mrs. McAdams' purse while Buffkin held the gun at Mr. McAdams' head. Buffkin said that he

---

aggravators sought or found, or of jury findings of the aggravators and death eligibility, offends due process and the protection against cruel and unusual punishment under Apprendi v. New Jersey, 530 U.S. 466 (2000).

Id. at 46-47.

5. Buffkin's March 30, 2005, affidavit, stated as follows:

On July 11, 1993, I Curtis Buffkin was holding the gun when Gary got shot in the head. I didn't try to kill him. It was an accident. I said it was Shane Kormondy who kill[ed] Gary, but the truth was I was the man who was with the gun when it went off. Shane Kormondy didn't kill Gary.

bumped Mr. McAdams in the head with the gun and the gun fired." Kormondy III,

983 So. 2d at 439.

The trial court denied Kormondy postconviction relief. Id. at 427. As to

Kormondy's claim of newly discovered evidence, the trial court found that

Buffkin's testimony at the evidentiary hearing was not credible, after comparing

the statement with all of the circumstances of the case, which consisted of

testimony from both William Long and Cecilia McAdams. Id. at 439. The trial

court therefore concluded that Buffkin's evidentiary hearing testimony did not

warrant a new trial for Kormondy:

> Mrs. McAdams's testimony, and Mr. Long's testimony regarding the
> crimes in question carry far more weight than that of Buffkin. [B]oth
> Mrs. McAdams and Long provided unwavering, credible testimony
> regarding the crimes in question. Buffkin's most recent testimony,
> claiming that he threatened and kidnapped Hazen and [Kormondy] so
> that they would participate in the crimes, and which contains inherent
> contradictions, is simply unbelievable and of little weight.[6]
> Buffkin's testimony, when weighed with the other evidence adduced
> at [Kormondy's] trial, would not have changed the outcome of
> [Kormondy's] trial.

State v. Kormondy, No. 93-3302 (Fla. 1st Cir. Ct. June 20, 2005) (Order Denying

Defendant's Amended Motion to Vacate Judgment of Conviction and Sentence, at

43). The trial court additionally found that Hazen's recent statement was not

---

6. We note that Kormondy himself affirmed in open court during the new
penalty-phase proceeding that he and his counsel agreed that it "is not the case"
that Kormondy "acted under the extreme influence, dominion, duress, or control of
another." Kormondy V, 688 F.3d at 1267.

credible and that such evidence would not have led to an acquittal or resulted in a different sentence for Kormondy.  Kormondy III, 983 So. 2d at 439.

On appeal of the denial of relief, Kormondy argued that the trial court erred by determining that the newly discovered evidence was not credible and that it would not have changed the outcome of the trial.  Id. at 437.[7]  We first noted that "[o]n three occasions Buffkin said Kormondy shot Mr. McAdams—in his statement to law enforcement officers, at his deposition, and at Hazen's trial."  Id. at 439.  This Court concluded, "Based on the evidence presented at the hearing, the

---

7.  Kormondy raised the following eleven issues on appeal:

(1) trial counsel rendered ineffective assistance during the guilt phase of trial by failing to require Kormondy's presence at pretrial conferences; (2) trial counsel rendered ineffective assistance by allowing Kormondy's statements to law enforcement officers to be introduced into evidence; (3) trial counsel rendered ineffective assistance by conceding Kormondy's guilt for burglary and robbery; (4) trial counsel rendered ineffective assistance by failing to impeach the State's witnesses; (5) trial counsel rendered ineffective assistance by failing to move for the disqualification of Judge Kuder and failing to withdraw from representation before the first trial; (6) trial counsel rendered ineffective assistance during the second penalty phase; (7) [the] trial court erred by finding that the newly discovered evidence of recanted testimony was not credible; (8) rule 4–3.5(d)(4) of the Rules Regulating the Florida Bar, which prevents counsel from contacting jurors, is unconstitutional; (9) execution by electrocution and lethal injection are cruel or unusual punishment or both; (10) his constitutional right against cruel and unusual punishment will be violated as he may be incompetent at the time of execution; and (11) the cumulative effect of errors deprived Kormondy of a fair trial.

Id. at 427-28.

- 11 -

evidence presented at trial, and the circumstances presented, the trial court properly found that Buffkin's recent statement was not credible and it would not have changed the outcome of Kormondy's trial or penalty phase." Id. at 440. In addition, we determined that the evidence supported the trial court's denial of relief on the claim as it related to Hazen's recent statement. Id. at 439. We also explained that "there is corroborating evidence to demonstrate that Kormondy was the shooter":

> The evidence concerning the identity of the shooter comes from both the testimony of Mrs. McAdams and William Long. Long testified that Kormondy confessed to shooting Mr. McAdams on two separate occasions—once when they saw a reward poster about the crimes and again when they returned home from drinking. Additionally, Mrs. McAdams testified that Buffkin was in the bedroom with her when Mr. McAdams was shot. She testified that she recognized the voice of the man who was in the bedroom with her as the man who first entered the McAdams' home with the gun; that man was Buffkin. Thus, if Buffkin was the only man in the bedroom with her when Mr. McAdams was shot, the shooter had to be either Hazen or Kormondy. However, there is no evidence pointing to Hazen as the shooter. Therefore, even if Mrs. McAdams had been impeached with this inconsistent statement about the number of men in the bedroom when Mr. McAdams was shot, there is other evidence to show that Kormondy was in fact the shooter.

Id. at 433. We affirmed the trial court's denial of Kormondy's initial motion for postconviction relief. Id. at 443. We also denied Kormondy's petition for a writ of habeas corpus. Id.[8] Thereafter, we denied Kormondy's motion for rehearing.

---

8. In his habeas petition, Kormondy raised the following three claims:

In July 2008, Kormondy filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Florida in which he maintained that he was "actually innocent" of the circumstances warranting the death penalty because he was not the shooter. Kormondy v. Tucker (Kormondy IV), No. 3:08cv316–RH, 2011 WL 9933762, at *20 (N.D. Fla. Sept. 29, 2011).[9] In

(1) appellate counsel was ineffective for failing to argue to this Court that the trial court's order failed to consider record mitigation in violation of Farr v. State, 621 So. 2d 1368 (Fla. 1993); (2) appellate counsel was ineffective for not presenting Mrs. McAdams' prior deposition testimony on direct appeal to this Court in order to establish that the trial court erred by not allowing Kormondy to confront Mrs. McAdams; and (3) appellate counsel was ineffective for failing to argue that Kormondy's waiver of mitigation was invalid because the trial court did not ask trial counsel what investigation for mitigation was done and what mitigation was available in violation of Koon v. Dugger, 619 So. 2d 246 (Fla. 1993).

Id. at 441.

9. Kormondy argued the following claims in the federal district court:

(1) at the penalty-phase retrial, the court deprived Mr. Kormondy of the Sixth Amendment right to confront witnesses when the court sustained the objection to the question the defense attempted to ask Mrs. McAdams about her prior deposition testimony; (2) the penalty-phase-retrial attorney rendered ineffective assistance by failing to investigate and present mitigation evidence; (3) the attorney in the second direct appeal rendered ineffective assistance by not asserting that the resentencing court should have considered the mitigation evidence from the first penalty-phase trial; (4) the original attorney or the penalty-phase-retrial attorney . . . rendered ineffective assistance by failing to impeach Mr. Long and Mrs. McAdams; (5) the original attorney had constitutionally impermissible conflicts of interest; (6)

- 13 -

addressing this claim, the federal district court determined that Kormondy failed to

show by clear and convincing evidence that he was not the shooter:

> The evidence that Mr. Kormondy was the shooter included—
> and still includes—Mr. Long's testimony that Mr. Kormondy
> admitted it. The evidence included—and still includes—Mrs.
> McAdams' testimony that Mr. Buffkin was not the shooter. It is still
> true that nobody says Mr. Hazen was the shooter. And other
> evidence—though not introduced in Mr. Kormondy's trial—also
> supports the conclusion that Mr. Kormondy was the shooter. Mr.
> Buffkin originally said Mr. Kormondy was the shooter. And for all
> the controversy over who was with Mrs. McAdams when the shot was
> fired, everyone who was at the house has consistently said that Mr.
> Kormondy was <u>not</u> in the back room; he was in the kitchen with Mr.
> McAdams. Mr. Buffkin now says that he, not Mr. Kormondy, was the
> shooter, and Mr. Hazen says that before going into the back room, he
> saw Mr. Buffkin holding a gun to Mr. McAdams' head. But Mr.
> Buffkin and Mr. Hazen originally gave different accounts. <u>There are
> good grounds to doubt that they are now telling the truth. These were
> participants in a horrific crime who have demonstrated a willingness
> to lie about what happened. They are serving life sentences and have
> little to lose by trying to help a confederate get off death row. Clear
> and convincing evidence this is not.</u>

<u>Id.</u> at \*20 (emphasis added). Finding that Kormondy was not entitled to relief on

his claims, the district court denied the petition, <u>id.</u> at \*22, which the Eleventh

Circuit Court of Appeals affirmed, <u>Kormondy V</u>, 688 F.3d at 1285.

---

Mr. Kormondy is "actually innocent" of the death penalty; and (7)
Florida's method for administering lethal injection is unconstitutional.

<u>Id.</u> at \*8.

- 14 -

**Kormondy's Current Motion**

On December 4, 2014, after his death warrant was signed, Kormondy filed a Successive Motion to Vacate Judgment and Sentence with Special Request for Leave to Amend pursuant to rule 3.851, asserting (1) a claim of newly discovered evidence; and (2) that he "is entitled to equitable relief and consideration of the merits regarding his claim that he received ineffective assistance of counsel and/or the State violated Brady v. Maryland[, 373 U.S. 83 (1963),] and Giglio v. United States[, 405 U.S. 150 (1972)]." With regard to his first claim, Kormondy alleged that in 1993, Buffkin told inmate Enoch Hall that he was attempting to escape and that he had no problem shooting people to effectuate his escape as he had just "blew McAdams mother f***ing brains out." Kormondy further alleged that Hall relayed Buffkin's statement to Kormondy in August 2014. To support Kormondy's claim that Buffkin was the person who shot Mr. McAdams, Kormondy attached to his motion affidavits from inmates Christopher Michelson, Russell Binstead, Roger Livingston, and John Turner. On December 10, 2014, the trial court denied an evidentiary hearing on Kormondy's claims. On December 15, 2014, the trial court denied Kormondy's successive motion for postconviction relief.[10] This appeal followed.

---

10. On December 7, 2014, Kormondy filed a motion to disqualify the trial court, which it denied the following day. Because Kormondy does not claim in his

# ANALYSIS

Kormondy claims that the trial court erred in (1) summarily denying his claim of newly discovered evidence; and (2) summarily denying his claim of ineffective assistance of postconviction counsel. We address these claims in turn.

## Claim of Newly Discovered Evidence

Kormondy contends that the trial court erred in summarily denying his claim of newly discovered evidence, which consisted of five individuals stating that Buffkin made certain incriminating statements to each of them in prison, establishing that Buffkin—and not Kormondy—was the person who shot Mr. McAdams. Kormondy asserts that this newly discovered evidence demonstrates that his death sentence is constitutionally unreliable and would probably result in Kormondy receiving a life sentence. According to Kormondy, this newly discovered evidence establishes that he was not more culpable than his codefendants and provides credibility to Buffkin's prior evidentiary hearing testimony that he was the shooter. Additionally, Kormondy contends that the trial court's basis for denying Kormondy's initial motion for postconviction relief was erroneous. We disagree.

---

initial brief that the trial court erred in denying his motion to disqualify, we do not consider whether his motion was properly denied.

According to Kormondy's motion, Buffkin told inmate Hall in 1993, that he had just "blew McAdams mother f***ing brains out." The substance of the affidavits are as follows. In his December 5, 2014, affidavit, Christopher Michelson provided that he was in prison with Buffkin or "Buffy." Between 1996 and 1998, Michelson maintained that:

> Buffy told me that he was the one that shot and killed the victim. He stated that he put the shooting on Kormondy because he knew if he didn't put it on one of his co-defendants he was going to get sentenced to death. He chose to put it [on] Kormondy because he blamed Kormondy for the threesome getting caught. Buffy stated that if Kormondy kept his mouth shut none of them would have been apprehended.

Russell Binstead stated in his December 5, 2014, affidavit, that in approximately 2011, Buffkin told him in prison that he was the person who killed the victim in his case, that he should be on death row, and that he felt guilty that one of his codefendants had a death sentence for a murder he committed. According to Roger Livingston's December 5, 2014, affidavit, after meeting Buffkin in prison in roughly 2012, Buffkin told him "that his co-defendant who was on death row was not the one that killed the victim. He told me that he was going to try to free the man and that one day he would end up on death row himself." In John Turner's December 9, 2014, affidavit, Turner stated that while in prison in 2012 Buffkin told him that "he put his co-defendant on death row and felt bad about it. He told me he was the ring leader and responsible for the murder. He stated that his co-

defendant who was on death row was there wrongfully." Thus, Buffkin's statements were reportedly made to inmates in prison around 2011 and 2012, with the exception of Buffkin's remarks to Christopher Michelson, which occurred between 1996 and 1998, and Enoch Hall, which occurred in 1993.

The trial court found that Kormondy's claim was procedurally barred because Kormondy was re-litigating a prior claim raised in his initial motion for postconviction relief. With regard to the information provided by Hall and Michelson, the trial court found that in light of Buffkin's 2005 evidentiary hearing testimony, Kormondy was unable to show that the defense could not have known of the evidence by the use of diligence as Buffkin confessed to both Hall and Michelson before 2005. The trial court further found that the proposed newly discovered evidence was inadmissible hearsay and cumulative to prior testimony from Buffkin and Hazen. Moreover, the trial court concluded that "Buffkin's confession as told through the five inmates would not have produced an acquittal or yielded a less severe sentence for [Kormondy]." Finally, the trial court found that Buffkin "could not have been the person who shot and killed Mr. McAdams" based on the totality of the evidence submitted at trial.

The standard of review of a summarily denied successive postconviction motion is as follows:

> A successive rule 3.851 motion may be denied without an
> evidentiary hearing if the records of the case conclusively show that

- 18 -

the movant is entitled to no relief.  See Fla. R. Crim. P. 3.851(f)(5)(B). This Court reviews the circuit court's decision to summarily deny a successive rule 3.851 motion de novo, accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief.

Walton v. State, 3 So. 3d 1000, 1005 (Fla. 2009).  "A postconviction court's decision whether to grant an evidentiary hearing on a rule 3.850 motion is ultimately based on written materials before the court.  Thus, its ruling is tantamount to a pure question of law, subject to de novo review."  Franqui v. State, 59 So. 3d 82, 95 (Fla. 2011) (footnote omitted).

This Court has set forth a two-prong test that a defendant must satisfy in order to obtain relief in cases involving newly discovered evidence:

To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements.  First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence.  Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.  See Jones v. State, 709 So. 2d 512, 521 (Fla. 1998) (Jones II).  Newly discovered evidence satisfies the second prong of the Jones II test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability."  Jones II, 709 So. 2d at 526 (quoting Jones v. State, 678 So. 2d 309, 315 (Fla. 1996)).  If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence.  See Jones v. State, 591 So. 2d 911, 915 (Fla. 1991) (Jones I).

Marek v. State, 14 So. 3d 985, 990 (Fla. 2009).  The postconviction court must consider the effect of the newly discovered evidence, in addition to all of the

admissible evidence that could be introduced at a new trial. Swafford v. State, 125 So. 3d 760, 775-76 (Fla. 2013).

Relying on his assertion that Kormondy's counsel first learned of Enoch Hall in August 2014, Kormondy claims that the trial court erred in finding that he was unable to show that the defense could not have known of the evidence by the use of diligence. We disagree. The trial court properly determined that Kormondy failed to show that the defense could not have known about Hall and Michelson—as to the alleged confessions made by Buffkin to each of them in the 1990s—by the use of diligence. In 2005, Buffkin testified during Kormondy's evidentiary hearing on his initial postconviction motion that "[t]here was [sic] a few other inmates that knew that I was the triggerman." Therefore, counsel could have sought out Hall and Michelson after Buffkin's evidentiary hearing testimony.

In addition, the newly discovered evidence offered by Kormondy, as to what Buffkin reportedly said, constitutes hearsay. See § 90.801(1)(c), Fla. Stat. (2014); see also Wyatt v. State, 71 So. 3d 86, 104 n.15 (Fla. 2011) (agreeing that an inmate's affidavit used for a claim of newly discovered evidence was inadmissible hearsay). In other words, all of the inmates' statements consist of relating that Buffkin told them at various times that he was the shooter.

Even if Kormondy satisfies the first prong of Jones II as to all of the alleged inculpatory statements Buffkin made, as presented by Kormondy, and even if such

evidence is admissible in the guilt phase or in the penalty phase,[11] we conclude that the newly discovered evidence is not of such nature that it would probably produce an acquittal on retrial or yield a less severe sentence. This Court previously concluded that the trial evidence demonstrated that Kormondy was the shooter separate from any testimony from Buffkin, consisting of both Kormondy's admissions to William Long and the observations of Cecilia McAdams, the surviving victim.

In Kormondy's original direct appeal, we observed that Kormondy admitted to William Long that he had shot Mr. McAdams, explaining to him that the gun had gone off accidentally. Kormondy I, 703 So. 2d at 457. In the appeal of

---

11. Section 921.141(1), Florida Statutes (2014), provides, in pertinent part, that in a separate sentencing proceeding

> evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (5) and (6). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements.

§ 921.141(1), Fla. Stat. (2014) (emphasis added). Although the statute "relaxes the evidentiary rules during the penalty phase of a capital trial, the statute clearly states that the defendant must have an opportunity to fairly rebut the hearsay evidence in order for it to be admissible. This rule applies to the State as well." Blackwood v. State, 777 So. 2d 399, 411-12 (Fla. 2000) (citation omitted).

Kormondy's resentencing, Kormondy claimed that his death sentence was disproportionate to the life sentences Buffkin and Hazen received. Kormondy II, 845 So. 2d at 47. Kormondy argued that Buffkin was "the leader," and a "prime instigator," Hazen, 700 So. 2d at 1214, and that Hazen was "the lead rapist," Kormondy II, 845 So. 2d at 47. We concluded that the record evidence refuted Kormondy's claim: "[t]he evidence from trial and the resentencing demonstrates that Kormondy committed the homicide and is more culpable than his codefendants; therefore, his sentence of death is not disproportional on this basis." Id. Further, we reasoned:

> Although Kormondy, in a taped statement . . . contended that Buffkin was the trigger man, the evidence in this case demonstrates otherwise. Mrs. McAdams, decedent's wife, who was sexually assaulted during the robbery, testified that the second person who raped her had shoulder-length hair. She also stated that while the first person who entered the home, Buffkin, was assaulting her, the shortest person (Hazen) and the long-haired one, Kormondy, were in the kitchen with her husband Gary when he was shot.
>
> Mrs. McAdams' description of Kormondy was supported by the testimony of several other witnesses as well as inconsistencies in Kormondy's taped statement. Allen Cotton also testified that Kormondy had longer hair than the others on the day he was arrested and that Hazen was shorter than Kormondy. Terri Kilgore, the officer who pursued Kormondy on foot, also described Kormondy as having long hair at the time of his arrest. This testimony tends to place Kormondy, not Buffkin, in the kitchen with the victim and Hazen when the fatal shot was fired.
>
> Kormondy's confession to Will Long also belies Kormondy's version of events. According to Long, he and Kormondy went to a convenience store the day after the murders and Kormondy

commented, upon seeing a reward poster related to the murders, that the only way the police would find the killer would be if they were walking behind him and Long at that moment. Later that day, Kormondy admitted killing the victim and tearfully explained that it was an accident. The testimony presented at trial tends to prove that Kormondy was the triggerman, and therefore his sentence of death is not disproportionate to the life sentences received by his codefendants.

Id. at 48 (emphasis added).

The newly discovered evidence now offered by Kormondy in the form of the affidavits is not of such nature that it would probably produce an acquittal on retrial or yield a less severe sentence. As noted above, Buffkin alleged that he shot Mr. McAdams during his testimony at Kormondy's evidentiary hearing on his claim of newly discovered evidence brought in his initial motion for postconviction relief. This claim was rejected by the trial court, which we affirmed on appeal. While it is true that in denying Kormondy's initial motion for postconviction relief the trial court found that "the sole reason Buffkin claimed that he shot Mr. McAdams was to afford Buffkin an opportunity to come to court and to escape" and that "Buffkin fabricated his most recent statement in an attempt to escape again," the trial court properly determined that Buffkin was not credible based on Buffkin's evidentiary hearing testimony along with its review of Buffkin's prior inconsistent statements. Kormondy III, 983 So. 2d at 440. On appeal, we considered all of the circumstances of the case, including the fact that Buffkin had previously told law enforcement officers and testified at deposition and Hazen's

- 23 -

trial that Kormondy was the shooter.  <u>Id.</u> at 439.  As the federal district court observed in rejecting a similar claim regarding the credibility of Buffkin and Hazen:

> There are good grounds to doubt that they are now telling the truth.  These were participants in a horrific crime who have demonstrated a willingness to lie about what happened.  They are serving life sentences and have little to lose by trying to help a confederate get off death row.

<u>Kormondy IV</u>, 2011 WL 9933762, at *20.

The presentation of statements from a number of fellow inmates who maintain that they also heard Buffkin confess to being the shooter does not change this picture, does not change the corroborating evidence, and would not probably produce a life sentence.  The testimony from Long and Mrs. McAdams at Kormondy's trial—establishing that Kormondy shot and killed Mr. McAdams— has remained unrefuted in postconviction proceedings.  Thus, the record conclusively shows that Kormondy is entitled to no relief.  Accordingly, we affirm the trial court's summary denial of this claim.

### Ineffective Assistance of Postconviction Counsel

Kormondy asserts that during the proceedings on his initial motion for postconviction relief, postconviction counsel was deficient in arguing claims of ineffective assistance of trial counsel, under <u>Strickland v. Washington</u>, 466 U.S.

668 (1984), as well as <u>Brady</u> and <u>Giglio</u> relating to trial witness William Long.[12]

For this claim, Kormondy relies on <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), and

<u>Trevino v. Thaler</u>, 133 S. Ct. 1911 (2013), and this Court's equitable powers. The

trial court denied this claim, concluding that neither <u>Martinez</u> nor <u>Trevino</u> is

applicable and that ineffective assistance of postconviction counsel claims are not

cognizable in a rule 3.851 motion.

In <u>Banks</u>, we recently denied Banks' claim of ineffective assistance of

postconviction counsel. 39 Fla. L. Weekly at S662. We explained that ineffective

assistance of postconviction counsel claims are not cognizable. <u>Id.</u>; <u>see also</u> <u>Moore</u>

<u>v. State</u>, 132 So. 3d 718, 724 (Fla. 2013); <u>Chavez v. State</u>, 129 So. 3d 1067, 1067

(Fla. 2013) (table); <u>Atwater v. State</u>, 118 So. 3d 219 (Fla. 2013) (table); <u>Mann v.</u>

---

12. In addressing one of Kormondy's guilt-phase claims raised on direct appeal, we observed that "Long was subjected to extensive cross-examination by the defense [and that] [t]he jury was given ample opportunity to assess Long's credibility." <u>Kormondy I</u>, 703 So. 2d at 459. In <u>Kormondy III</u>, Kormondy claimed that his trial counsel was ineffective for failing to impeach William Long as to "his prior felony conviction, the benefits he received from the State in exchange for his testimony against Kormondy, and the inconsistency between Long's deposition statements and his trial testimony." 983 So. 2d at 432. We concluded that Kormondy failed to establish prejudice regarding trial counsel's failure to specifically question Long about his felony conviction. <u>Id.</u> Because Kormondy did not argue in the trial court the other areas of impeachment which Kormondy complained of on appeal, we determined that those subclaims were not properly before us. <u>Id.</u> at 432 & n.4. We note that the federal district court found that Kormondy "ha[d] shown no prejudice at all from the failure to impeach Mr. Long on the additional grounds now proposed." <u>Kormondy IV</u>, 2011 WL 9933762, at *17.

<u>State</u>, 112 So. 3d 1158, 1164 (Fla. 2013); <u>Howell v. State</u>, 109 So. 3d 763, 774 (Fla. 2013); <u>Gore v. State</u>, 91 So. 3d 769, 778 (Fla. 2012), <u>cert. denied</u>, 132 S. Ct. 1904 (2012).  Furthermore, we reasoned that neither <u>Martinez</u> nor <u>Trevino</u> supports an independent basis for relief in state court proceedings.  <u>Banks</u>, 39 Fla. L. Weekly at S662; <u>see also</u> <u>Zakrzewski v. State</u>, 147 So. 3d 531 (Fla. 2014) (table); <u>Howell</u>, 109 So. 3d at 774; <u>Chavez</u>, 129 So. 3d at 1067; <u>Gore</u>, 91 So. 3d at 778. We decline Kormondy's invitation to reconsider our previous rulings on this issue. Accordingly, Kormondy is not entitled to relief on this claim.

**CONCLUSION**

Based on the foregoing, we affirm the trial court's order denying Kormondy postconviction relief.  No rehearing will be entertained by this Court and the mandate shall issue immediately.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

An Appeal from the Circuit Court in and for Escambia County,
Linda Lee Nobles, Judge - Case No. 171993CF003302AXXXXX

Michael Paul Reiter, Ocala, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, and Carolyn Marie Snurkowski, Associate Deputy Attorney General, Tallahassee, Florida,

for Appellee