**Darryl D. RUTH, Jr., Appellant,**

v.

**STATE of Florida, Appellee.**

**CASE NO. 1D15–4099**

District Court of Appeal of Florida, First District.

Opinion filed December 21, 2016.

Mark V. Murray, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Robert Quentin Humphrey, Assistant Attorney General, Tallahassee, for Appellee.

## ON MOTION FOR WRITTEN OPINION AND CERTIFICATION

RAY, J.

Convicted of burglary of a dwelling with a person assaulted and armed robbery with a firearm, Appellant seeks review of an order denying a motion for postconviction relief on the grounds of (1) newly discovered evidence in the form of a recantation and (2) ineffective assistance of counsel for failure to investigate and present certain evidence at trial. We previously affirmed the postconviction court's order without an opinion. Appellant has since timely filed a motion for a written opinion and certification, which we now grant in part and deny in part as reflected below. For the reasons that follow, we affirm the trial court's rulings on both aspects of the motion for postconviction relief and deny the request for certification.

### Recantation Claim

■ The recantation claim was significant, as the State's case at trial depended on the testimony of the recanting witness. This witness testified at trial that he was absolutely sure that Appellant, a long-time family friend, entered his mother's home, pointed a gun at him, and said, "You know what it is," just before five other men, all armed and masked, entered. The witness testified that the group terrorized, severely battered, and robbed him in front of his three-year-old nephew, whom Appellant threatened with a gun in an effort to elicit from the witness where to find money. He recognized Appellant from his voice and his face, which was only partially covered by a mask. The recanting witness was the only eyewitness to the crimes other than the three-year-old, who obviously did not testify. The witness now says that he lied at trial when he said he was absolutely sure Appellant was in the home, that he in fact had major doubts about his identification at that time, and that he is now absolutely sure that Appellant was not in the home that night.

As the postconviction court observed, "if [the recanting witness] is to be believed now, his trial testimony sent an innocent person to prison." Nevertheless, the trial court denied the recantation claim, finding,

"I simply do not believe [the witness's] testimony." The court went on to opine that, although it is possible that this witness lied at trial, it is more likely that he told the truth to the best of his ability and now wants to help the defendant. The postconviction court concluded that, "[w]hatever the truth may be," the court could not grant relief on the recantation claim because it did not find the recantation testimony credible or reliable. The court also made the observation that Appellant's claim depended on the testimony of an "admitted liar."

One feature of this case that has caused us consternation is that, not only did Appellant's postconviction claim depend on the testimony of an "admitted liar," but the criminal convictions for which he is now serving substantial prison sentences do as well. In fact, in the State's arguments before this Court, the State observed, "The record has shown that every time [the witness] had an opportunity to explain what occurred on the night of the robbery, he told a different story." Indeed, the witness told the 911 operator just after the crime that he did not recognize any of the six men involved, as they all wore masks and none of them spoke, but he told the officer on the scene shortly thereafter that he was one hundred percent sure that Appellant was one of the six men. The witness told the officer that night that Appellant's mask covered only part of his face and that he recognized Appellant's voice, one he later described to the jury as a distinctive voice he had heard a "million" times before.

Between the night of the incident and the time of trial, the witness spoke to an officer again and was also deposed. On the various occasions that he had to describe what occurred, the witness added details and changed his story about what actions Appellant took inside the home. For example, the witness indicated in deposition that Appellant held a gun to his nephew's head, but in earlier statements, the witness said that Appellant merely stood by in the living room while one suspect held a gun to the nephew's head at the direction of another. Appellant also went from not speaking at all, according to the 911 report, to speaking enough to be recognized, according to the witness's statements to police, to making a memorable statement to the witness immediately upon entrance into home, according to the deposition. Despite these and other inconsistencies and evolutions in the witness's account, the State exercised its authority to prosecute the case based on this witness's testimony, and a jury was convinced of Appellant's guilt beyond a reasonable doubt. Appellant appealed from his conviction and resulting sentence but voluntarily dismissed that appeal to pursue the claims at issue here.

In the postconviction proceedings, the witness testified that the person he said at trial was Appellant could not have been Appellant because that person had a scar that Appellant does not have. He maintained that the version of events he offered at trial was correct except for the identification of Appellant. In other words, someone took all the actions he attributed to Appellant at trial, but that person was not Appellant.

■ In this appeal, Appellant claims that the postconviction court's credibility findings cannot support the denial of relief and requests certification of an unspecified question on this issue. On the contrary, case law provides that a trial court must deny a request for a new trial based on recantation of testimony by a State witness if the court "is not satisfied that such testimony is true." Armstrong v. State, 642 So.2d 730, 735 (Fla. 1994). Although the postconviction court here candidly acknowledged that it did not absolutely know the objective truth, it was not satisfied that

the recantation testimony was true. Under these circumstances and well-settled law, the postconviction court could not upset the verdict of the jury, which heard and evaluated the recanting witness's original testimony. Although a different fact-finder might have reached a different result, we have reviewed the postconviction court's stated reasons for its decision and have determined that the court properly executed its duty to weigh the evidence and make a difficult credibility determination. We cannot substitute our judgment for that of the postconviction court. Accordingly, we affirm the denial of the recantation claim. We decline to certify a question related to the court's credibility reasoning because we find that the court correctly applied existing Florida Supreme Court precedent and simply expressed trepidation in the face of its responsibility as the fact-finder.

**Ineffective Assistance of Counsel Claim**

■ The second ruling at issue is the denial of the claim of ineffective assistance of counsel on alternate determinations that the claim was due to be barred as successive and that it lacked merit. This claim arrived at the postconviction court under rather unusual circumstances. Appellant filed his first motion for postconviction relief through an attorney during the pendency of his direct appeal, and this Court relinquished jurisdiction to allow the trial court to rule on that motion. That motion, which did not include any claims of ineffective assistance of counsel, was denied with the court's going so far as to call one of the claims essentially frivolous. This Court's jurisdiction resumed for consideration of the direct appeal, only to be lost again when Appellant voluntarily dismissed the case. Appellant's basis for raising the new claim of ineffective assistance in a successive postconviction motion is that he did not know the claim existed when he presented his first claims through counsel.

At the hearing on the instant claims, the attorney who filed Appellant's first postconviction motion admitted that he had not reviewed the entire trial transcript before filing the motion. He testified that, although he did not guarantee a result on the motion, he suggested that Appellant go forward with the motion at that time because he believed it was meritorious and Appellant wanted to have the case resolved in his favor as soon as possible. The record also shows that Appellant was advised by the court at a hearing on his first postconviction motion that if he pursued it, he would likely not be allowed to raise additional postconviction claims later. After conferring with counsel, Appellant elected to proceed.

In the instant matter, the postconviction court ruled that the ineffective assistance claim was procedurally barred under Florida Rule of Criminal Procedure 3.850(h)(2), which provides that "a court may dismiss a second or successive motion" that alleges new or different grounds for relief if "the judge finds that the failure of the defendant or the attorney to assert those grounds in a prior motion constituted an abuse of the procedure or there was no good cause for the failure of the defendant or defendant's counsel to have asserted those grounds in a prior motion." The permissive language of this rule indicates that the determination of good cause is a matter of discretion for the trial court. See also Clough v. State, 136 So.3d 680, 683 (Fla. 2d DCA 2014).

■ Assuming for the sake of discussion that Appellant's ineffective assistance claim was meritorious, the trial court was within its discretion in ruling as it did on the procedural question. Although Appellant argues that his original motion was incomplete due to misadvice of counsel, the rule does not provide that misadvice of counsel is necessarily "good cause" for fail-

ure to assert all grounds in the first motion for postconviction relief. On the contrary, by providing that the court may dismiss a successive claim if it finds that either the defendant or his counsel (if represented) did not have good cause for failing to present the claim in the earlier motion, the rule permits a trial court to bar a successive motion precisely when the claims in the successive motion were omitted from the original motion due to counsel's oversight. The language of the rule indicates that if counsel did not have good cause for failing to file the claim with the original motion, then the client may be required to suffer the consequence of counsel's failing. This effect of the rule is consistent with Florida case law providing that there is no state remedy for ineffective assistance of postconviction counsel, Kormondy v. State, 154 So.3d 341, 354 (Fla. 2015), and we are not at liberty to rewrite the rule. Regardless, the court's ruling finds additional support in representations made by Appellant at the time of the first motion that he understood he may not be allowed to file another postconviction motion and testimony by his counsel that Appellant wanted to press forward to have the case resolved quickly. Under these circumstances, we cannot disturb the court's discretionary ruling.

█ In an alternate ruling, the court found that counsel was not ineffective. If the court had not found the claim procedurally barred, we would affirm on this basis as well. Appellant argued that his counsel was ineffective for failing to present evidence that it was impossible for him to have committed the crime because cell phone records placed his phone at his home in Midway, Florida, at a time when he would not have been in Midway if he had committed the crime. At the postconviction hearing, Appellant presented evidence that it would take at least thirteen minutes to drive from his home to the victim's home and that his cell phone was at his home less than thirteen minutes from the time of the crime. This argument ignores the fact that Appellant did not show that he was actually with his phone at the time and does not sufficiently account for the fact that the exact time of the crime has not been established. Given this failing in the postconviction evidence, Appellant could not establish a reasonable probability that the verdict would have been different had counsel presented the timing evidence. Accordingly, the motion was due to be denied on the merits. See Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

For the foregoing reasons, we AFFIRM.

MAKAR and OSTERHAUS, JJ., CONCUR.