# Supreme Court of Florida

_____

No. SC15-411
_____

**SCOTT MANSFIELD,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[August 25, 2016]

PER CURIAM.

This case is before this Court on appeal from an order denying Scott

Mansfield's motion to vacate a judgment of conviction of first-degree murder and

a sentence of death under Florida Rule of Criminal Procedure 3.851. We have

jurisdiction. See Art. V, § 3(b)(1), Fla. Const. For the reasons below, we affirm.

Mansfield was convicted of the first-degree murder of Sara Robles and

sentenced to death. Evidence against Mansfield included "the testimony of

convicted felon Michael Derrick Johns who recounted a . . . conversation [in a

courthouse holding cell] with Mansfield in which Mansfield confessed to Robles'

murder." Mansfield v. State (Mansfield I), 758 So. 2d 636, 641-42 (Fla. 2000).

On direct appeal, this Court affirmed Mansfield's conviction and death sentence. See id. at 649. We also affirmed the denial of Mansfield's initial motion for postconviction relief. See Mansfield v. State (Mansfield II), 911 So. 2d 1160 (Fla. 2005).

On October 7, 2013, Johns wrote a letter to the State Attorney's Office that is the subject of this postconviction motion and appeal:

> [T]his is to inform you of my intention to contact the parties captioned above [Scott Mansfield and Wilfredo Collado], in order to provide them with sworn and notarized affidavits detailing a full and complete recantation of all testimony elicited from me in those cases. In addition, I also intend to detail certain schemes that both the Osceola County S.O. [sic], and State Attorney's Office employed in these cases—particularly Mansfield's—where my involvement was concerned, that would constitute egregious and invidious due process violations, that, if proven at an evidentiary hearing based upon newly discovered evidence would more than likely require a reversal of the conviction.

On September 7, 2014, Mansfield filed a successive postconviction motion, claiming that the letter constitutes newly discovered evidence that entitles him to a new trial.

The circuit court held an evidentiary hearing on December 16, 2014, at which both Johns and William Cordova, investigator for the Capital Collateral Regional Counsel, testified. Johns and Cordova both testified that Cordova interviewed Johns at the Blackwater Correctional Facility. Cordova testified that he showed Johns the letter during the interview. When counsel for Mansfield

asked Cordova about his conversation with Johns at Blackwater, the circuit court refused to allow the testimony on hearsay grounds. Johns invoked his right against self-incrimination with regard to questions concerning the letter. Johns also testified at the hearing, "My testimony [from Mansfield's trial] is unchanged today. I have nothing further to say about this matter . . . . I testified truthfully [at Mansfield's trial], and my testimony remains unchanged." The circuit court excluded the letter itself from evidence on hearsay grounds.

In its written order denying Mansfield's postconviction motion, the circuit court found that Johns' letter did not constitute a recantation, but at most his intention to recant. Because the letter was not given under oath and was not even an actual recantation, the order explained, the letter is even less reliable than an actual, sworn recantation, which are themselves notoriously unreliable. Therefore the court found that, "[t]he unsworn letter is neither admissible nor sufficient, standing alone, to warrant collateral relief." The circuit court also determined that, assuming the letter was admissible evidence, it was insufficiently credible to justify requiring a new trial in the absence of a sworn, in-court recantation subject to cross-examination. Finally, the circuit court determined that, even if the letter were admissible, a retrial would not probably result in either an acquittal or a lesser sentence, in light of the circumstantial evidence of Mansfield's guilt and the fact that Johns had been thoroughly impeached. The circuit court also denied

Mansfield's motion for rehearing, explicitly finding that Johns' hearing testimony—affirming his testimony at trial—negated any written recantation.

Mansfield appealed, raising two issues: (1) whether Johns' recantation letter constitutes newly discovered evidence that entitles Mansfield to a new trial or, alternatively, a new penalty phase, and (2) whether the judicial decisions in Mansfield's prior direct and postconviction appeals, which relied on Johns' testimony, are now invalid in light of Johns' letter.

Since the postconviction court came to the legal conclusion that Mansfield is not entitled to a new trial because Johns' letter does not amount to a recantation or newly discovered evidence, we review the trial court's application of the law to the facts de novo. Cf. Hendrix v. State, 908 So. 2d 412, 423 (Fla. 2005) (reviewing de novo the trial court's application of the law to the facts in ruling on a postconviction claim that the government withheld material evidence); Gore v. State, 846 So. 2d 461, 468 (Fla. 2003) (reviewing de novo the application of the law to the facts on a claim of ineffective assistance of trial counsel); see also Pittman v. State, 90 So. 3d 794, 814 (Fla. 2011) (citing Preston v. State, 970 So. 2d 789, 798 (Fla. 2007)).

Mansfield's first argument is that Johns recanted his trial testimony and that this recantation entitles Mansfield to a new trial. We reject this argument because nothing in the record supports Mansfield's argument. Johns testified at the

evidentiary hearing that his trial testimony was "truthful[]" and remained "unchanged." No record evidence contradicts this testimony. Therefore, Johns did not recant and there is no newly discovered evidence.

This Court has repeatedly rejected similar claims of newly discovered evidence based on out-of-court recantations that were not repeated under oath at the evidentiary hearing. See Duckett v. State, 918 So. 2d 224, 232-33 (Fla. 2005) (rejecting a newly discovered evidence claim where a recanting witness invoked her privilege against self-incrimination at the evidentiary hearing rather than recant under oath); Robinson v. State, 707 So. 2d 688, 691 (Fla. 1998) ("The absence of direct testimony by the alleged recanting witness is fatal to this claim."). Likewise, because Johns did not recant his trial testimony under oath at the evidentiary hearing, we affirm the circuit court's denial of Mansfield's motion for postconviction relief.

Mansfield's second argument is that Johns' letter constitutes newly discovered evidence warranting a new trial because Mansfield could use the letter as a prior inconsistent statement to impeach Johns at retrial. The letter, Mansfield argues, would either substantially impair Johns' credibility or prevent him from testifying at all, thereby weakening the State's case against Mansfield. However, Mansfield's argument fails because the State introduced other evidence of

Mansfield's guilt, and thus, the letter would probably not result in an acquittal or a lesser sentence.

To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements:

> First, the evidence offered must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of due diligence. Second, the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial. See Jones v. State, 709 So. 2d 512, 521 (Fla. 1998). Newly discovered evidence satisfies the second prong of this test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." Id. at 526 (quoting Jones v. State, 678 So. 2d 309, 315 (Fla. 1996)).

Duckett v. State, 148 So. 3d 1163, 1167-68 (Fla. 2014) (quoting Walton v. State, 3 So. 3d 1000, 1008 (Fla. 2009)). If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence. See Reed v. State, 116 So. 3d 260, 264-65 (Fla. 2013) (quoting Gore v. State, 91 So. 3d 769, 774 (Fla. 2012)); Jones v. State (Jones I), 591 So. 2d 911, 915 (Fla. 1991).

Because Johns did not send the letter attempting to recant his prior testimony until after Mansfield's trial, it is clear that Mansfield has satisfied the first showing of newly discovered evidence. However, in light of the evidence presented at trial, Mansfield is unable to show that the letter gives rise to a reasonable doubt as to his culpability.

At trial, the State introduced evidence of witnesses who saw Mansfield with the victim on the night of the crime. The first witness, a clerk at the Winn-Dixie adjacent to where the victim's body was found, testified that the victim, accompanied by a man, purchased groceries shortly before the murder. The clerk also saw the victim and the same man together outside the Winn-Dixie when the clerk took her break around 3:00 a.m. They were gone by the time she returned to Winn-Dixie at 3:30 a.m. The clerk eventually identified the man from a photo array as Mansfield. The clerk also confirmed that items later found scattered on the ground near the victim's body and listed on a receipt also found near the victim were the items that the victim purchased. The second witness, a bartender at nearby Rosie's Pub, saw Mansfield, the victim, and a second man all exit a bar together shortly before 2:00 a.m.

Further, Mansfield's ten-year-old niece recalled that Mansfield returned on the night of the murder at 4:30 a.m., shirtless, soaking wet, and carrying his shoes, ninety minutes after the projected 3:00 a.m. time of death. Mansfield's niece also observed a small bloodstain on Mansfield's shorts when he returned on the night of the murder. Police later recovered a host of items from Mansfield's room, including some with bloodstains, but the DNA on each of these items was consistent with Mansfield's DNA and could not have come from the victim.

Moreover, Mansfield's pager was found near the victim. "All of the law enforcement officers who testified at the hearing remembered the pager being within twenty feet of the body. Mansfield offered no evidence to support his postconviction contention that the pager was not in the same area as the body." Mansfield II, 911 So. 2d at 1173.

The State also introduced evidence that the police found food stamps in Mansfield's room thought to have belonged to the victim. The victim was a food stamps recipient, while Mansfield and those living with him were not. Police also found a knife in Mansfield's room, the blade of which was consistent with multiple wounds on the victim.

The ring Mansfield was wearing at the time of his arrest contained a distinctive "Grim Reaper" pattern which was consistent with an injury on the victim's neck. However, the medical examiner testified that the pattern was consistent with a host of other items, such as a belt buckle. Police did not detect any blood on the ring.

In light of the above evidence remaining against Mansfield, we affirm the portion of the circuit court's order denying Mansfield a new guilt phase trial.

Mansfield next argues that Johns' letter would have resulted in a lesser sentence. We disagree: Johns' letter would not probably result in a lesser sentence at resentencing because Johns' testimony played only a minimal role in the

sentencing phase. The sentencing order cited Johns' testimony only twice: when discussing the aggravating circumstance that Mansfield committed the murder while engaged in the commission or attempted commission of a sexual battery, and when discussing the mitigating circumstance that Mansfield was an alcoholic and was under the influence of alcohol during the commission of the murder.

Because we find that Johns did not recant his trial testimony and that further impeachment of Johns with his inconsistent statement would not have produced an acquittal or lesser sentence at retrial, we affirm the circuit court's denial of Mansfield's motion for postconviction relief.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Osceola County,
    Frederick James Lauten, Jr., Chief Judge –
    Case No. 491995CF002078XXCRXX

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel – Middle Region, and James Lawrence Driscoll, Jr. and David Dixon Hendry, Assistant Capital Collateral Regional Counsel – Middle Region, Tampa, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Katherine Maria Diamandis, Assistant Attorney General, and Stephen D. Ake, Assistant Attorney

General, Tampa, Florida,

    for Appellee