# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-5266

_____

JOSEPH ANTHONY GORMAN,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Bay County.
Brantley S. Clark, Jr., Judge.

January 14, 2019

WINSOR, J.

In 1991, Joseph Gorman was accused of sexually assaulting his six-year-old daughter. The daughter—who was seven by the time of Gorman's trial—told the jury what Gorman had done to her, and the jury convicted. Gorman has been in prison ever since, where he is serving a life sentence. He now appeals the trial court's denial of postconviction relief, and we affirm.

In the years after the trial, the daughter twice recanted her accusation, and Gorman twice responded by seeking a new trial based on newly discovered evidence.[1] The daughter (by then

---

[1] Gorman also filed another postconviction motion on unrelated grounds. The trial court denied that motion, and this

twenty-two) first recanted in 2007, executing an affidavit that said her father never molested her. The affidavit said her mother (formerly Gorman's wife) told the daughter to lie at trial, promising that if she did, Gorman would go "to a better place and it would help him." But after Gorman based a postconviction motion on that affidavit, the daughter recanted her recantation, claiming in a telephonic deposition that she signed the affidavit at her aunt's urging without reading it, all to offer her dying grandmother peace. She denied any recollection of what happened with her father back when she was six or seven. Facing that development, Gorman withdrew his motion. But later, when the daughter was thirty, she recanted again, now maintaining that her mother and another woman had coached her to testify that Gorman had molested her. In this sworn statement, she explained her contrary deposition testimony by saying that she was then living with (and dependent on) her mother, that her mother was sitting with her during the telephonic deposition, and that her mother did not want her to recant her original trial testimony.

Based on the latest recantation, Gorman filed a new motion, and the court held an evidentiary hearing. The daughter (then thirty-two) testified at the hearing, saying she testified falsely at trial and that Gorman never molested her. She again blamed her original testimony on her mother's improper influence, and she repeated her claim that she recanted her 2007 recantation only because she needed her mother's support at the time. Now, she said, she was no longer dependent on her mother and could finally testify truthfully. She acknowledged that her memory was "spotty," that she only remembers "bits and pieces," and that her many medications—including medication for her bipolar disorder—might contribute to her memory problems. But she insisted Gorman was innocent.

The trial court also heard from the daughter's brother—Gorman's son—who testified that his sister had long told him there was no molestation. He testified that "sometimes she seems like her mind's not all there" and that "some of her memories are just

court affirmed. *Gorman v. State*, 738 So. 2d 966 (Fla. 1st DCA 1999).

back and forth." But his sister had "never said anything bad about [Gorman], not one word," and was the victim of a "manipulative" mother. He believed her. The trial court also heard from the prosecutor who handled the 1992 trial. She testified that she never instructed the daughter to testify to anything but the truth.

The trial court ultimately denied postconviction relief. In a comprehensive written order, the judge detailed the evidence at the 1992 trial and the 2017 evidentiary hearing before concluding that the daughter's recantation was untrue. The court noted the daughter's testimony about her poor memory, her inconsistent statements (including on matters other than whether her father molested her), an expert's trial testimony about sex-abuse victims' efforts to forget, trial testimony that the daughter had told others about the abuse, and the daughter's "educational level and psychological state." All of this together made "it clear to the Court that the recantation [was] unreliable."

To receive a new trial based on newly discovered evidence, a defendant must show that the evidence was actually "newly discovered," meaning it was unknown to the court, parties, or counsel at the time of trial and could not have been discovered through diligence. *Mansfield v. State*, 204 So. 3d 14, 17 (Fla. 2016). The defendant must also show that the evidence is "of such nature that it would probably produce an acquittal on retrial." *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998). A recantation can satisfy these requirements, but only if the court finds it credible. Therefore, "a trial judge should deny a new trial if it is not satisfied that the new testimony is true." *Kormondy v. State*, 983 So. 2d 418, 438 (Fla. 2007); *accord Davis v. State*, 26 So. 3d 519, 526 (Fla. 2009) ("Specifically, recanted testimony that is alleged to constitute newly discovered evidence will mandate a new trial only if (1) the court is satisfied that the recantation is true . . . ."); *Armstrong v. State*, 642 So. 2d 730, 735 (Fla. 1994) ("[R]ecanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury." (quoting *Bell v. State*, 90 So. 2d 704 (Fla. 1956)).

Here, the trial court found the daughter's recantation not credible. We therefore must affirm unless the court's finding was not supported by competent, substantial evidence. *See Archer v. State,* 934 So. 2d 1187, 1195-96 (Fla. 2006). We conclude the evidence supported the trial court's determination. The trial court cited the daughter's memory problems, inconsistent testimony, and other factors, and—perhaps most important—the court benefitted from seeing the daughter testify in person. *See Stephens v. State*, 748 So. 2d 1028, 1034 (Fla. 1999) (noting "the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact" and explaining that "[t]he deference that appellate courts afford findings of fact based on competent, substantial evidence is an important principle of appellate review"). Because evidence supported the trial court's conclusion, we affirm.[2]

AFFIRMED.

B.L. THOMAS, C.J., and WETHERELL, J., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Andy Thomas, Public Defender, and Glen P. Gifford, Assistant Public Defender, Tallahassee, for Appellant.

---

[2] Given our conclusion about the trial court's credibility determination, we need not consider whether the more recent recantation was truly "newly discovered evidence." *Cf. Archer*, 934 So. 2d at 1194 ("A recantation will not be considered newly discovered evidence where the recantation offers nothing new or where the recantation is offered by an untrustworthy individual who gave inconsistent statements all along.").

Ashley Brooke Moody, Attorney General, and Kaitlin Weiss, Assistant Attorney General, Tallahassee, for Appellee.